**Jesse ETHREDGE, Plaintiff,**

v.

**Robert HAIL, Deputy Base Commander of Robins Air Force Base, in his official capacity as an officer and agent of the United States Air Force, an agency of the United States of America, Defendant.**

**Civ. No. 92–187–2–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

June 5, 1992.

Gerald R. Weber, ACLU of Georgia, Atlanta, Ga., for plaintiff.

Frank Butler, Asst. U.S. Atty., Macon, Ga., for defendant.

FITZPATRICK, District Judge.

On June 4, 1992, this Court held a preliminary injunction hearing in the above-styled case.

### FACTS

Jesse Ethredge is a civilian aircraft mechanic employed by Robins Air Force Base ("RAFB"). He enters the base four to six days a week to do work and, until October 1991, used his Mazda truck for transportation to and from the base.

In 1984 Ethredge put a "bumper sticker"[1] on the window of his truck reading

---

1. Plaintiff's message is not on a bumper sticker. It is composed of letter decals affixed to the window on the back of the camper top on his truck. See Plaintiff's Exhibit 1. For lack of a

"Hell With Reagan". Ethredge changed his sign when George Bush came into office. The new sign read "Read My Lips Hell With Geo Bush" and at the bottom of the rear window "Forgive Bush Not Egypt He Lied".

On April 5, 1990, Ethredge was stopped by the Armed Forces Traffic Control and issued a ticket for "Provoking Speech on a Truck". The citation was dismissed the next day because there was no such traffic offense. Plaintiff's Exhibit 2.

In February 1991, during Operation Desert Storm, Major General Richard F. Gillis, installation commander of RAFB, directed Colonel Robert Hail, Deputy base commander, to order Ethredge to remove the bumper sticker from his vehicle while on RAFB. Colonel Hail contacted Ethredge's supervisor and directed him to order Ethredge to remove the sign. Ethredge's superior refused to give him the order because he did not receive a written order. Colonel Hail assumed Ethredge complied with his order and notified General Gillis that his order had been carried out.[2]

On or about October 4, 1991, however, Colonel Hail learned that another Action Line Complaint[3] had been received concerning Ethredge's vehicle. Hail Affidavit at ¶ 7. On October 17, Hail issued an administrative order directing Ethredge to remove the sign while on RAFB. Id. at ¶¶ 5–7. The stated reason for ordering removal was that the message contained "disparaging or embarrassing comments about the Commander in Chief of the United States." Plaintiff's Exhibit 4.

Other vehicles on the base, including a military vehicle, have pro-Bush, pro-Republican bumper stickers stating such sentiments as "Sam Nunn Wants Your Guns", "Support Desert Storm Troops", "Insured By Smith and Wesson", "Ross Perot for President", as well as bumper stickers expressing religious beliefs, opposing drug abuse, and stating preferences for athletic teams, leisure activities and radio stations. Ethredge Affidavit, McSwain Affidavit. None of these car owners have been ordered to remove their bumper stickers.

In order to comply with the regulation Ethredge would have to permanently remove the message from his truck. Consequently, since the date of the administrative order, he has driven a different vehicle to work.

On April 28, 1992, Plaintiff filed a motion for a preliminary injunction seeking to restrain Defendant from enforcing the RAFB regulation.

## DISCUSSION

A Court generally may issue a preliminary injunction if the movant shows:

1. A substantial likelihood of prevailing on the merits of its claims;

2. A substantial threat that it will suffer immediate and irreparable injury;

3. That the threat of injury to the movant substantially outweighs the threatened harm injunctive relief may do to the defendants; and

4. That the injunction would not be adverse to the public interest.

*W.E. Callaway v. Block,* 763 F.2d 1283, 1287 (11th Cir.1985); *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1422–23 (11th Cir.1984). The injunction should not be granted unless "the movant clearly carries the burden of persuasion as to all four prerequisites". *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983).

---

better term, however, the Court will use the term "bumper sticker". The fact that Plaintiff message is not on a bumper sticker does not affect its analysis. At the hearing, the government stated that it would have prohibited a bumper sticker carrying Plaintiff's message.

**2.** Colonel Hail assumed Ethredge had complied with his order because he had to prepare a response to a Congressional Inquiry from the Honorable J. Roy Rowland, dated February 26, 1991, concerning Ethredge's contention that the order to remove the sign violated his constitutional rights. Hail Affidavit at paragraph 6; Plaintiff's Exhibit 3.

**3.** Colonel Hail received complaints concerning Ethredge's sign from military personnel as well as civilian employees. Hail Affidavit at paras. 5, 7, 9.

## SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff contends that his First Amendment rights were violated for the following reasons: (1) the regulation is viewpoint based and/or unreasonable; (2) his "bumper sticker" does not present a clear danger to military discipline, loyalty, or morale; and (3) the regulation restricts his freedom of expression rights and his right to travel.

 The Court initially acknowledges that military regulations are entitled to a greater degree of deference that those affecting a civilian community. In *Goldman v. Weinburger* the Supreme Court stated:

[o]ur review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws and regulations designed for civilian society. The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment and esprit de corps.

475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986)[4]. The military's " 'primary business ... [is] to fight or to be ready to fight wars should the occasion arise.' " *Greer*, 424 U.S. at 837–838, 96 S.Ct. at 1217 (quoting *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955)). Consequently, the military may impose restrictions on speech that would be unacceptable in the civilian community. The Supreme Court acknowledged this fact in *Parker v. Levy* when it stated:

"In the armed forces some restrictions exist for reasons which have no counterpart in the civilian community. Disrespectful and contemptuous speech, even advocacy of violent change, is tolerable in the civilian community, for it does not directly affect the capacity of the government to discharge its responsibilities unless it is both directed to inciting lawless action and is likely to produce such action. [Citations omitted]. *In military life, however, other considerations must be weighed.* The armed forces depend on a command structure that at times must commit men to combat, not only hazarding their lives but ultimately involving the security of the Nation itself. Speech that is unprotected in the civil population may nonetheless undermine the effectiveness of the responsiveness to command. If it does it is constitutionally unprotected."

417 U.S. 733, 758–59, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974) (quoting *United States v. Priest*, 21 USCMA 564, 570, 45 C.M.R. 338, 344 (1972)). (Emphasis added).

Viewpoint Based and Unreasonable

The validity of the government's limitation on Plaintiff's speech depends on the type of government property that RAFB is. *See Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985); *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). There are three types of government property ("fora"): traditional public fora, limited (or "created" or "designated") public fora, and nonpublic fora. RAFB is a nonpublic forum.[5] Access "to a nonpublic forum can

---

**4.** *Goldman* addressed the issue of religious expression within the military context. The deference accorded the military, however, is applicable to the present case.

**5.** The Supreme Court has repeatedly indicated that military bases generally are not a public forums. *See Greer v. Spock*, 424 U.S. 828, 838, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976) ("[t]he notion that federal military reservations, like municipal streets and parks have traditionally served as a place for public assembly and communication of thoughts by private citizens is ... historically and constitutionally false.");

*United States v. Albertini*, 472 U.S. 675, 686, 105 S.Ct. 2897, 2905, 86 L.Ed.2d 536 (1985) ("[m]ilitary bases generally are not public fora"); *see also Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 134, 97 S.Ct. 2532, 2542, 53 L.Ed.2d 629 (1977) ("a government enclave such as a military base [is] not a public forum.").

*Flower v. United States*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972), is the only case in which the Supreme Court held that a street on a military base had been converted to a public fora. *Flower*, however, involved exceptional circumstances. The street in question "was a pub-

be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Defense & Education Fund,* 473 U.S. 788, 806, 105 S.Ct. 3439, 3541, 87 L.Ed.2d 567 (1985).

Viewpoint Discrimination

■ Although military regulations are accorded deference, the military may not engage in viewpoint discrimination. *See Greer v. Spock,* 424 U.S. at 839, 96 S.Ct. at 1218 ("Fort Dix policy objectively and even-handedly applied"); *Albertini,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *M.N.C. Hinesville, Inc. v. Department of Defense,* 791 F.2d 1466, 1476 (11th Cir. 1986) ("no impermissible viewpoint discrimination found").

■ Plaintiff contends that the regulation is viewpoint based because it prohibits speech that is critical of George Bush. Defendant counters that the regulation is viewpoint neutral because it only prohibits speech that disparages or embarrasses the Commander in Chief of the United States military. The regulation states:

> bumper stickers or other similar paraphernalia which *embarrass or disparage the Commander in Chief* are inappropriate as they have a negative impact on the good order and discipline of the service members stationed at Robins AFB.

(Emphasis added).

First, the order prohibits speech disparaging the Commander in Chief, whether it be Dan Quayle, Ross Perot, Bill Clinton or George Bush. Additionally, the regulation does not prohibit criticism. Rather, it prohibits speech that disparages the Commander in Chief.[6] Plaintiff's expression calls the Commander in Chief of United States military a liar and tells him to "go to Hell". Furthermore, none of the other bumper stickers present on base disparage the Commander in Chief. A bumper sticker for Ross Perot is implicitly an anti-Bush bumper sticker but it does not express that sentiment in a disparaging manner. Therefore, Defendant's failure to force the removal of other bumper stickers does not demonstrate that the regulation is viewpoint based. In fact, the presence of the Perot bumper stickers shows that anti-Bush views are permitted. Consequently, the Court concludes that the regulation is viewpoint neutral.

Plaintiff contends that such a narrow interpretation of viewpoint neutrality is unsupported by case law and contradicts other Air Force Regulations. First, Plaintiff cites *Fire Fighters Assoc. v. Barry,* 742 F.Supp. 1182 (D.D.C.1990), in support of his assertion that the regulation is not viewpoint neutral. In *Barry* the Court held that a fire department regulation prohibiting bumper stickers, which could be "construed as obscene, cause embarrassment or harassment of [fire department] members", 742 F.Supp. at 1186 n. 3, from being displayed on fire department property, was not viewpoint neutral. The Court stated that the regulation discriminated on the basis of viewpoint because bumper stickers consistent with departmental views were unlikely to be condemned by the regulation. In the present case, however, the regulation does not prohibit criticism of the Commander in Chief. Rather, it prohibits the criticism from being expressed in a disparaging manner.

Second, Plaintiff also contends other Air Force regulations evidence the viewpoint bias inherent in the regulation. Air Force regulations permit "materials [that] are critical of government policies of officials." *Air Force Regulation* 35–15(3). Additionally the regulations state that "installation commanders should encourage and pro-

---

lic thoroughfare in San Antonio no different from all the other thoroughfare in that city" and the military had abandoned any right to exclude civilian vehicular or pedestrian traffic. *Greer v. Spock,* 424 U.S. at 835, 96 S.Ct. at 1216.

At the hearing Plaintiff's counsel stated that he accepted that RAFB was a nonpublic forum for purposes of the preliminary injunction hearing.

6. "Criticism" is defined as "the passing of unfavorable judgment; censure, disapproval". *American Heritage Dictionary 314 (1981).* "Disparage" is "to belittle or sight, to reduce in esteem or rank." *Id.* at 379.

mote ... a wide range of viewpoints on public issues." *Id.* The Court notes, however, that these Air Force regulations are subordinate to and must be interpreted consistently with Article 88 and Article 134 of the Uniform Code of Military Justice.[7] These articles would subject an officer or an enlisted man to a court martial for displaying the very message that Plaintiff displayed. Thus, the Air Force regulations cited by Plaintiff do not demonstrate that the present regulation discriminates on the basis of viewpoint.

Reasonableness

■ "The Government's decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808, 105 S.Ct. at 3452. Additionally, the reasonableness of the regulation must be assessed in light of the purposes of RAFB and of the military necessity for good order and discipline.

First, Plaintiff contends that it is unreasonable to prohibit the criticism of someone simply because they are in the chain of command. Defendant contends that disparaging remarks directed towards anyone in authority can undermine discipline and morale, both of which are indispensable to good order and responsiveness to command. As previously stated, the regulation only prohibits speech that disparages or embarrasses the Commander in Chief. The military has an interest in maintaining order and discipline. Its interest in fostering respect for and obedience to those in the chain of command is not eliminated merely because a person in the chain of command is also a political figure. Respect for and obedience to the Commander in Chief is particularly important because "[t]he mili-

tary establishment is subject to the control of the civilian Commander in Chief and the civilian departmental heads under him, and its function is to carry out the policies made by those civilian superiors." *Parker v. Levy*, 417 U.S. at 751, 94 S.Ct. at 2559.

Second, Plaintiff contends that the regulation is unreasonable because he is a civilian[8]. The applicable forum analysis does not mandate that plaintiff's status be taken into consideration. Other courts have found that regulations prohibiting civilians from expressing views on military bases to be reasonable. *See Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (court upheld Air Force regulation that prohibited both military personnel and civilians from circulating petitions on its premises).

Third, Plaintiff contends that the regulation is unreasonable because it effectively restricts his freedom of expression off the base by requiring him to drive another vehicle without the message to work and because it restricts his right to travel. Plaintiff can drive his truck, message intact, anywhere he desires, except the base. He even could drive the truck to work so long as he covered or removed the prohibited expression while on base. Furthermore, Plaintiff's contention that the regulation restricts his right to travel is without merit. Therefore, the Court concludes that the regulation is reasonable because the military has an interest in promoting order and discipline and because it only prohibits the Plaintiff from displaying his bumper sticker on base.

Danger to Military Discipline, Loyalty, and Morale

■ The government may only limit expression on a military base where it creates

---

7. Article 88, 10 U.S.C. § 888, provides:
 Any commissioned officer who uses contemptuous words against the President, Vice President, Congress, the Secretary of Defense, the Secretary of the military department ... shall be punished as a court martial may direct. Additionally, an active duty enlisted member who attacked or defamed the Commander in Chief, or anyone else in the chain of command, as Plaintiff has done would be violating Article 134 of the Uniform Code of Military Justice, 10

U.S.C. § 934, which prohibits engaging in conduct to the prejudice of good order and discipline.

8. The Court notes that military police may stop and search a civilian's car on a military base without probable cause. *See, United States v. Vaughan*, 475 F.2d 1262 (1973). The Court does not think that a civilian's First Amendment rights are accorded more value than his Fourth Amendment rights.

a "clear danger to military loyalty, discipline, or morale of members of the armed forces". *Brown v. Glines,* 444 U.S. 348, 349–50 n. 1, 100 S.Ct. 594, 597 n. 1. Plaintiff contends that there is no evidence that his speech affected the loyalty, discipline, or morale of any service personnel on RAFB.

The government, however, is not obligated to show proof of "actual harm". *Id.,* 473 U.S. at 810, 105 S.Ct. at 3453 ("government need not wait until actual havoc is wreaked to restrict access to a nonpublic forum"); *Priest v. Secretary of Navy,* 570 F.2d 1013 (D.D.C.1977). In *Priest,* a former navy seaman sought collateral review of his conviction by court martial for violation of Article 134 of the Uniform Code of Military Justice. The defendant was convicted for distributing a newsletter urging insubordination. The Court noted that in an Article 134 case in which the First Amendment was a defense the court martial had to determine the potential for the words to erode loyalty, discipline and morale. In evaluating the sufficiency of the evidence, the court stated that "[t]he government does not have a burden of showing a causal relationship between [the defendant's] newsletter and specific examples of weakened loyalty, discipline or morale; the question ... is whether there is a clear tendency to weaken them." *Id.* at 1018.

Additionally, the Supreme Court has indicated that the judgment of military com-

manders should be given deference by the courts because "[n]ot only are courts 'ill-equipped to determine the impact on discipline that any particular intrusion upon military authority might have' [citation omitted] but the military authorities have been charged by the Executive and Legislative Branches with carrying out the nation's military policy." *Goldman,* 475 U.S. at 507–508, 106 S.Ct. at 1313.

The Court notes that General Gillis initially gave the order to remove the message given during Operation Desert Storm when obedience and morale were critical to RAFB's mission. His interest in morale and discipline did not end with the war. "[T]he necessary habits of unity and discipline must be developed in advance of trouble." *Goldman,* 475 U.S. at 508, 106 S.Ct. at 1313.

Plaintiff argues that *Barry* dictates that this Court find that there was not a clear danger to the discipline, morale and loyalty of the service personnel. In *Barry* the court held that a fire fighters bumper sticker calling his department a "joke" did not adversely affect the discipline and order of the fire station. In *Barry,* however, the court expressly rejected the defendant's analogy of a fire department to the military. The court stated that "[w]hile fire and police departments often are referred to as para-military associations, these organizations do not demand rigorous and unquestioning duty to the degree required by the military." 742 F.Supp. at 1196–97 n. 25.[9]

**9.** Admittedly, the court made this statement in the context of a facial challenge to the fire departments *Press Access* regulations. This fact in no way changes the court's acknowledgement that the military is different than a civilian fire department. Plaintiff contends that while military regulations are less subject to facial challenges, the court in *Barry* applied the same standard to the bumper stickers that is to be applied in the present case, i.e., whether the bumper sticker presented a clear danger to order.

Plaintiff's argument suggests that the recognition of the military as a "specialized society" is only relevant when a litigant challenges a military regulation for facial invalidity. The Supreme Court implied otherwise when it stated that "while the members of the military are not excluded from the protection granted by the First Amendment, the different character of the

military community and of the military mission requires a different application of those principles ... doctrines of First Amendment overbreadth are not exempt from the operation of these principles" *Parker v. Levy,* 417 U.S. at 758, 94 S.Ct. at 2563. Thus, the recognition of the military's special status is not limited to overbreadth challenges. Furthermore, the court's statement in *Barry* acknowledged the military requires higher degree of order and discipline. Consequently, speech that might not have a clear tendency to weaken loyalty, discipline or morale in a fire department could have that tendency in the military context.

The recognition that the military requires a higher degree of order than fire departments would also serve to distinguish *Hobbs v. Thompson,* 448 F.2d 456 (5th Cir.1971), which struck down a Macon ordinance that prohibited fire department employees from identifying them-

Plaintiff further argues that the Defendant's failure to prohibit his "Go to Hell Ronald Reagan" message demonstrates that there was no clear danger in the instant case. Defendant's failure to prohibit Plaintiff's earlier bumper sticker is not dispositive. General Gillis did not know about the bumper sticker until February of 1991. At that time he made the determination to prohibit it.

Plaintiff also contends that the objections of other military personnel do not justify restricting his speech. Concededly, the Supreme Court has routinely rejected "Heckler's Veto" arguments even when real violence is threatened. *See Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949); *Gregory v. Chicago,* 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); *Brown v. Louisiana,* 383 U.S. 131, 133, 86 S.Ct. 719, 719, 15 L.Ed.2d 637 (1966); *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). Nevertheless, the complaints are evidence, which General Gillis permissibly took into consideration, when assessing whether Plaintiff's speech had a clear tendency to weaken discipline, loyalty and morale. Finally, as previously stated, a military member who displayed a sign similar to that displayed by Plaintiff would be subject to a trial by court martial under the Uniform Code of Military Justice. General Gillis determined that permitting a civilian to display such a message when Air Force personnel could not would have a tendency to "undermine good order, discipline, and responsiveness to command." Gillis Affidavit at para. 4. Consequently, the Court finds that Plaintiff's speech was a clear danger to the discipline, loyalty and morale of Air Force personnel on RAFB.

This court understands that there is a long tradition of open and free political dissent in this country. Our toleration of opposing views of how this country should be governed is one of the pillars upon which the United States was founded. Bumper stickers showing allegiance to one candidate or another are among the most

selves with any candidate for office because the bumper stickers would not adversely affect a

popular and time-honored means of political expression. Indeed the relative absence of bumper stickers in this political year compared to former years shows a disinterest in candidates that is troubling. The South in particular has always enjoyed a zest for rambunctious politics that in an earlier day added spice to life, especially in the rural areas.

On the other hand, military bases are unique; they are not in the same class as factories, shopping centers, or residential subdivisions. The mission of the military has always been to defend this country and if it is felt that this duty requires that certain First Amendment rights of those who work or live upon a base be reasonably curtailed to some extent, then the courts have for many years given the military leeway to do so.

The plaintiff has worked at Robins Air Force Base for over 25 years and has a responsible job for which he is well paid. His job, however, requires certain sacrifices that he would not be forced to make if he worked somewhere else. As Justice Holmes said a hundred years ago, "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." HOLMES, J., *McAuliffe v. Mayor,* 155 Mass. 216, 220, 29 N.E. 517 (1892).

The Court concludes that the Plaintiff has not shown a substantial likelihood of success on the merits. Since Plaintiff has failed to establish the first prerequisite to obtain a preliminary injunction the Court need not consider the remaining prerequisites.

### CONCLUSION

Accordingly, for the reasons state above, Plaintiff's motion for a preliminary injunction is DENIED.

SO ORDERED.

fire fighter's firefighting ability.