[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 96-8586

D.C. Docket No. 4:96-CR-00004-001(JRE)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM J. CORRIGAN,

Defendant-Appellant.

No. 96-8587

D.C. Docket No. 4:96-CR-00007-001(JRE)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT M. HOLSTEIN, JR.,

Defendant-Appellant.

No. 96-8588

D.C. Docket No. 4:96-CR-00009-001(JRE)


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus

RAYMOND G. LAPORT,

Defendant-Appellant.


No. 96-8589

D.C. Docket No. 4:96-CR-00010-001(JRE)


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus

JOANNE LINGLE,

Defendant-Appellant.

No. 96-8590

D.C. Docket No. 4:96-CR-00011-001(JRE)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN X. LINNEHAN,

Defendant-Appellant.

No. 96-8591

D.C. Docket No. 4:96-CR-00013-001(JRE)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLAIRE C. O'MARA,

Defendant-Appellant.

No. 96-8592

D.C. Docket No. 4:96-CR-00015-001(JRE)


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


JOSEPH A. ZITO,

Defendant-Appellant.



Appeals from the United States District Court
for the Middle District of Georgia


**(June 25, 1998)**



Before TJOFLAT and BIRCH, Circuit Judges, and HOWARD*, Senior District Judge.



*Honorable Alex T. Howard, Jr., Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.


TJOFLAT, Circuit Judge:

1

Thirteen protesters staged political demonstrations on the grounds of the Fort Benning military base in Georgia and were subsequently convicted of criminal trespass pursuant to 18 U.S.C. § 1382 (1994). Seven of the demonstrators now appeal, asserting that their convictions were obtained in violation of the First Amendment, because the regulation prohibiting political demonstrations on the base was not applied in a content-neutral fashion. We conclude that the regulation was applied in a content-neutral fashion and that the appellants' convictions were not obtained in violation of the First Amendment. We therefore affirm the judgments of the district court.

I.

The United States Army School of the Americas ("USARSA") is a facility maintained at Fort Benning, Georgia, for the purpose of providing military education and training to military personnel of Caribbean, Central American, and South American countries. See 10 U.S.C. § 4415 (1994). The facility is controversial; its graduates, including former Panamanian dictator Manuel Noriega, are alleged to have been involved in various human rights abuses throughout Latin America and the Caribbean, including the 1980 assassination of Salvadoran Archbishop Oscar Romero and the 1989 murders of six Jesuit priests in El Salvador.

Political protests at the base are frequent. On November 15, 1995, appellant Linnehan and four other defendants[1] entered Fort Benning, went to the Officers' Club, and distributed leaflets calling for the closure of USARSA. Linnehan and his companions were apprehended

---

[1] There were thirteen defendants before the district court; only seven have appealed, and their appeals have been consolidated.

and were ordered to leave the base and not to return.  They were later charged with criminal trespass pursuant to 18 U.S.C. § 1382 (1994).

The next day, November 16th, appellants Corrigan, Holstein, Laport, Lingle, O'Mara, and Zito, along with four co-defendants,[2] arrived at Fort Benning.  The appellants and the other defendants wished to commemorate the 1989 murders of the six Jesuit priests in El Salvador by staging a demonstration calling for the closure of USARSA.  The demonstrators assembled just outside of the base, where they were met by a representative of the Staff Judge Advocate.  The representative read to them a proclamation from base commander Major General John W. Hendrix that stated the base policy against public political demonstrations and warned that anyone who entered the base and engaged in a demonstration could be prosecuted for criminal trespass.

After the proclamation was read, the ten demonstrators entered Fort Benning and walked about a half-mile into the base.  Eight of the demonstrators wore white T-shirts spattered with blood; these demonstrators were intended to represent the six priests killed in El Salvador and two others who were killed with them.  The two remaining demonstrators wore fatigues and held cardboard replicas of machine guns; these two protesters were intended to represent the Salvadoran soldiers who carried out the killings.  When military and civilian police officers approached the demonstrators, the two men in fatigues pretended to shoot the eight "victims," who fell to the ground.  All ten demonstrators were then arrested and charged with criminal trespass.

---

[2]  Defendants Bichsel and De Benedette participated in the demonstrations on both November 15th and November 16th.  Neither Bichsel nor De Benedette are parties to this appeal, however.

The defendants' cases were heard at a bench trial in the district court. The defendants severally moved to dismiss the indictments on the ground that the United States had selectively prohibited those opposing the continued maintenance of USARSA from engaging in public political demonstrations on the grounds of the base, while allowing those who supported the maintenance of USARSA to engage in such activity, and that the arrests of the defendants pursuant to this policy were therefore unconstitutional. After trial, the district court denied the defendants' motions to dismiss, and all thirteen defendants were convicted of criminal trespass pursuant to section 1382 and sentenced to terms of imprisonment ranging from two months to six months. Seven of the thirteen defendants now appeal their convictions,[3] asserting that their convictions should be reversed on First Amendment grounds. We affirm.

II.

Section 1382 provides:

§ 1382. Entering military, naval, or Coast Guard property

    Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or
    Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof--

---

[3] All of the appellants have served out their sentences. Their appeals are not moot, however. The Supreme Court has recognized that "the possibility of a criminal defendant's suffering 'collateral legal consequences' from a sentence already served precludes a finding of mootness." Minnesota v. Dickerson, 508 U.S. 366, 371 n. 2, 113 S.Ct. 2130, 2134 n. 2, 124 L.Ed.2d 334 (1993) (citations omitted). Because "[a] number of disabilities may attach to a convicted defendant even after he has left prison," a defendant who has finished serving his sentence still has standing to challenge the legality of his conviction. North Carolina v. Rice, 404 U.S. 244, 247, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971).

4

Shall be fined under this title or imprisoned not more than six months, or both.

18 U.S.C. § 1382 (1994). The appellants were charged and convicted pursuant to the first clause of Section 1382, on the ground that they entered Fort Benning "for [a] purpose prohibited by . . . lawful regulation" -- to conduct a public political demonstration. Such demonstrations are prohibited by the Commanding General of Fort Benning pursuant to a base regulation which provides as follows:

> a. Picketing, demonstrations, sit-ins, protest marches, political speeches, and similar activities which could interfere with or prevent the orderly accomplishment of the installation's mission, or which present a clear danger to the loyalty, discipline, or morale of the troops are prohibited and will not be conducted on this post except as provided in this regulation. Applications for exception shall be submitted in writing to the Provost Marshal at least seven days prior to the proposed demonstration or other activity.

> b. No one shall enter or remain on this post for any of the purposes prohibited by this regulation, and such entry will constitute a violation of 18 U.S.C. § 1382.

United States Army Infantry Center (Fort Benning, Georgia Garrison) Reg. No. 210-5, ¶ 44(a)-(b). The appellants assert that their convictions should be reversed because Section 1382 and Regulation 210-5, paragraph 44 are unconstitutional as applied to them.

The scope of the government's power to restrict political demonstrations or other First Amendment activity on government property depends upon the type of forum involved. See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 799-800, 105 S.Ct. 3439, 3447-48, 87 L.Ed.2d 567 (1985); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44-46, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983). In Perry, the Supreme Court identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. Perry, 460 U.S. at 44-46, 103 S.Ct. at 954-55. In

5

traditional public fora, such as public streets or parks, the government may impose content-based regulations only if the regulations are "necessary to serve a compelling state interest and [are] narrowly drawn to achieve that end," and may impose content-neutral time, place, and manner restrictions only if they "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry, 460 U.S. at 45, 103 S.Ct. at 954. "A similar standard applies to [public] property that is not a traditional public forum, but which has been opened by the government as a place for expressive conduct." United States v. Belsky, 799 F.2d 1485, 1488 (11th Cir. 1986) (citing Perry, 460 U.S. at 45-46, 103 S.Ct. at 955).

Different, more lenient standards control the government's regulation of First Amendment activities in nonpublic fora. A nonpublic forum is "public property that is not by tradition or designation a forum for public communication." Perry, 460 U.S. at 46, 103 S.Ct. at 955. Government has the right to preserve such nonpublic fora for their lawfully dedicated purposes, and may impose regulations of speech in nonpublic fora as long as the regulations are reasonable and are content-neutral. See id.; United States v. Kokinda, 497 U.S. 720, 730, 110 S.Ct. 3115, 3121-22, 111 L.Ed.2d 571 (1990).

There is no question, and the appellants do not dispute, that Fort Benning is a nonpublic forum that, like virtually all military installations, has never been regarded or designated as a place open to public speech activities. See United States v. Albertini, 472 U.S. 675, 686, 105 S.Ct. 2897, 2905, 86 L.Ed.2d 536 (1985) ("Military bases generally are not public fora . . . ."); Greer v. Spock, 424 U.S. 828, 838, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976) ("The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is . . .

6

historically and constitutionally false."); <u>M.N.C. of Hinesville, Inc. v. United States Dep't of Defense</u>, 791 F.2d 1466, 1473 (11th Cir. 1986). As the Supreme Court has stated, it is "the business of a military installation . . . to train soldiers, not to provide a public forum." <u>Greer</u>, 424 U.S. at 838, 96 S.Ct. at 1217. Accordingly, military officials at Fort Benning may impose regulations on speech as long as the regulations are reasonable and content-neutral. <u>See</u> <u>Ethredge v. Hail</u>, 56 F.3d 1324, 1327 (11th Cir. 1995).

The appellants do not argue that Section 1382 and Regulation 210-5, paragraph 44 are unreasonable or non-content-neutral on their face. Such a facial challenge would not likely be successful. The Supreme Court has stated that Section 1382 is content-neutral, <u>see</u> <u>Albertini</u>, 472 U.S. at 687, 105 S.Ct. at 2906, and we believe the same to be true of Regulation 210-5, paragraph 44. Moreover, we believe that both the statute and the base regulation are facially reasonable in light of "the traditional need of the military to retain control over the scope and extent of public activity and speech permitted on . . . military base[s]," <u>Brown v. Palmer</u>, 944 F.2d 732, 739 (10th Cir. 1991), the interest of the government in "keeping official military activities . . . free of entanglement with partisan political campaigns," <u>Greer</u>, 424 U.S. at 839, 96 S.Ct. at 1218, and the military commanding officer's "practically exclusive" power to admit private persons to, or exclude them from, the area of his command "in the interest of good order and military discipline." <u>Cafeteria and Restaurant Workers Union, Local 473 v. McElroy</u>, 367 U.S. 886, 893, 81 S.Ct. 1743, 1747-48, 6 L.Ed.2d 1230 (1961) (internal quotation marks and citations omitted).

7

Instead, the appellants argue that Section 1382 and Regulation 210-5, paragraph 44 have been applied in a non-content-neutral fashion.[4] They point out that numerous military officials, congressional representatives, and senators have publicly spoken in favor of the maintenance of USARSA while participating in various ceremonies and assemblies on the grounds of the base. This, they argue, is a clear violation of Regulation 210-5's prohibition of political speech on base. The aforementioned officials were not prosecuted for engaging in public speech activities on base, however. The appellants argue that this constitutes a non-content-neutral -- and thus unconstitutional -- application of Section 1382 and Regulation 210-5, paragraph 44; pro-USARSA speech is permitted by base officials, they assert, while anti-USARSA speech is punished by criminal prosecution.[5]

The appellants have simply misread the controlling regulation. Regulation 210-5, paragraph 44(a) does not flatly prohibit all speech activities on base; rather, it prohibits speech activities "which could interfere with or prevent the orderly accomplishment of the installation's mission, or which present a clear danger to the loyalty, discipline, or morale of the troops." U.S.A.I.C. (Fort Benning, Georgia Garrison) Reg. No. 210-5, ¶ 44(a). Base officials have determined that public political demonstrations on the grounds of the base are likely to "prevent the orderly accomplishment of the installation's mission . . . or [to endanger] the loyalty,

---

[4] The relevant facts are not in dispute. We are therefore left with the question whether the application of the statute and regulation at issue was constitutional. This is an issue of law which we review de novo. See Agan v. Vaughn, 119 F.3d 1538, 1541 (11th Cir. 1997).

[5] We note that the appellants do not assert that they were selectively prosecuted in violation of the Equal Protection clause. See, e.g., Jones v. White, 992 F.2d 1548, 1571-72 (11th Cir. 1993).

8

discipline, or morale of the troops," but that speeches by public officials and military officers, made during official ceremonies and assemblies, are not.

"[M]ilitary officials need not demonstrate actual harm before implementing a regulation restricting speech," and may act to forestall reasonably anticipated harm to morale or to the orderly functioning of the base. Ethredge, 56 F.3d at 1328; see also Persons for Free Speech at SAC v. United States Air Force, 675 F.2d 1010, 1020 (10th Cir.) (en banc) (holding that deference must be afforded to the reasonable judgments of base commanders), cert. denied, 459 U.S. 1092, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982). We find the distinction between official speechmaking and public political demonstrations drawn by Fort Benning officials to be a reasonable one in light of the public policies recited supra. The appellants and other anti-USARSA demonstrators have themselves made clear that such a distinction is reasonable; past anti-USARSA demonstrations on the grounds of Fort Benning have included not only mock executions, but also protest marches by hundreds of demonstrators at a time, and the splattering of blood on the main building of the school. Such demonstrations certainly are likely to "prevent the orderly accomplishment of the installation's mission . . . or [to endanger] the loyalty, discipline, or morale of the troops" -- indeed, such demonstrations are at least in part intended to do so. Speeches made by congressmen and military officers during official ceremonies and assemblies, however, are not likely to cause disruption of military activities or derogation of morale on the base.

We also find that the distinction between official speechmaking and public political demonstrations drawn by Fort Benning officials has been applied in a content-neutral fashion. Ramon Lopez, a civilian and the executive director of the School of the Americas Support

9

Group, a private organization unaffiliated with USARSA, testified at trial that he and others had once staged a pro-USARSA counter-demonstration outside of the grounds of Fort Benning. Lopez testified that an officer from the Judge Advocate General's office met the group outside the base and warned them that, if they were to take their pro-USARSA demonstration onto the base, they would be arrested for trespassing. Similarly, Bernard Pfeiffer, the chief of administrative and civil law in the Office of the Staff Judge Advocate at Fort Benning, testified that no pro-USARSA demonstrations have ever been allowed on the base, and that even official speakers would be subject to prosecution under Section 1382 "to the extent that they [might] engage in . . . disruptive activities."

We therefore conclude that Section 1382 and Regulation 210-5, paragraph 44, as applied to prohibit public political demonstrations while allowing official speeches, are content-neutral as well as reasonable, and that the statute and regulation do not violate the First Amendment. Accordingly, we further conclude that the appellants' convictions were not obtained in violation of the Constitution. We therefore AFFIRM the judgments of the district court.

SO ORDERED.

10