[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 98-8131
Non-Argument Calendar

D. C. Docket No. 4:97-cr-38-JRE

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/02/98
THOMAS  K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM J. BICHSEL,
ROY L. BOURGEOIS, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Georgia

**(October 2, 1998)**

Before ANDERSON, COX and DUBINA, Circuit Judges.

PER CURIAM:

Twenty-two defendants appeal their convictions and sentences for reentering a military installation after the installation's commander had ordered them not to reenter, in violation of 18 U.S.C. § 1382. We affirm.

*Background*

Fort Benning, Georgia, is home to the United States Army School of the Americas, a U.S.-funded military training center that caters to Latin American soldiers. Because its alumni include military men (such as Manuel Noriega) who are believed to be responsible for human rights abuses in Latin America, the School has long been a focus of protest. Each November protesters march to commemorate the 1989 murder of six Jesuits in El Salvador, allegedly the victims of School alumni. The defendants here had participated in such protests before. Three, Edward Kinane, William Bichsel, and Roy Bourgeois, were convicted of violating § 1382 in 1995; Bourgeois also had multiple convictions arising from his participation in 1994's protests. The other nineteen defendants marched in 1996, and that year the Fort's commanding officer sent letters barring them from entering Fort property again. In November 1997, the defendants nonetheless joined a mock funeral procession on Fort property with about 600 other protesters.

The defendants were charged by information with violation of § 1382. The relevant part of the statute prohibits reentry into a military installation "after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof." 18 U.S.C. § 1382. The information, however, charged the defendants simply with reentering "after having been ordered not to reenter by the installation commander." (R.1-1.)

The defendants were convicted and sentenced to six months' imprisonment and a $3,000 fine each. On appeal, they raise two issues worthy of discussion. First, they argue that the evidence is

2

insufficient to convict them because the Government did not prove that they received the letters containing the Fort commander's order prohibiting reentry. Second, they challenge the length of their sentences and the fines imposed on them.[1]

*Discussion*

*Sufficiency of the Evidence*

The defendants moved for judgment of acquittal after the Government rested. The court denied the motion, and the defendants presented evidence. They did not, however, renew their motion for judgment of acquittal at the close of the evidence. In such circumstances, the defendants have waived any objection to the sufficiency of the evidence. *See United States v. Williams*, 144 F.3d 1397, 1402 (11th Cir. 1998). This court will accordingly affirm the convictions unless there is a manifest miscarriage of justice — if the evidence "on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* (quoting *United States v. Tapia*, 761 F.2d 1488, 1491-92 (11th Cir. 1985)).

The asserted lack of evidence here does not qualify as "shocking." To prove the offense as charged, the Government was required to show that the defendants received notice that the Fort's commander had barred future entry. *See* 18 U.S.C. § 1382. For three defendants, the evidence was quite strong. Fort Benning's commanding officer sent Bichsel and Bourgeois bar letters in 1994 and

---

[1] The defendants also raise the issue that their protest was protected First Amendment activity. They do not, however, brief the issue, relying instead on the briefs in another case. Federal Rule of Appellate Procedure 28(*i*) does not permit such adoption by reference between cases, and the defendants have not separately moved to adopt the briefs. Until such a motion is made and granted, the briefs from the other case are not readily accessible to judges of the court. We have not read them for this case. In any event, this court resolved the First Amendment issue against a group of School of the Americas protesters arrested following the November 1996 protests. *See United States v. Corrigan*, 144 F.3d 763, 769 (11th Cir. 1998). For all that appears, this case is indistinguishable.

3

1991, respectively. In 1995, Bichsel and Bourgeois joined the annual November protest. They were convicted of violating § 1382 following that protest, and these prior judgments were in evidence in this case. Because the Government based the charge here on the same 1991 and 1994 letters, the prior conviction based upon those letters qualifies as more than tenuous evidence that the two received those letters. *Cf. United States v. McCoy*, 866 F.2d 826, 828 (6th Cir. 1989) (taking notice as a foregone conclusion on similar facts). A third defendant, Edward Kinane, received his bar letter in 1995 by hand-delivery; the officer in charge of maintaining order during the 1995 demonstration described how all the protesters that year were arrested and handed a bar letter before they were allowed to leave.

The remaining defendants' bar letters were issued in 1996 and mailed to them, return receipt requested. In each case, the green return-receipt card was returned with a signature appearing to be the defendant's. The defendants now make much of the possibility that a letter arrived at the wrong destination, and that someone forged the defendant's signature. (The defendants point out that the record contains two signatures that purport to be defendant Ruth Woodring's, and they argue that the two signatures differ.) It is not impossible that such an event occurred, and that some defendants never received the letters. But a factfinder may legitimately infer that a defendant actually received a letter addressed to him or her when the sender received a return receipt bearing what purports to be the defendant's signature. This inference is strong enough that the district court's reliance on it is hardly "shocking." We therefore conclude that there has been no manifest miscarriage of justice.

*Sentencing Issues*

4

Section 1382 is a Class B misdemeanor because a violation carries a maximum term of imprisonment of six months. *See* 18 U.S.C. § 1382; 18 U.S.C. § 3559(a)(7). The Sentencing Guidelines do not apply to Class B misdemeanors. *See* U.S.S.G. § 1B1.9 (1997). The defendants' sentences thus may be disturbed on appeal only if they were imposed in violation of law (such as by exceeding statutory limits) or are "plainly unreasonable." 18 U.S.C. § 3742(e)(1), (4); *id.* § 3742(f)(1), (3); *see United States v. Underwood*, 61 F.3d 306, 308 (5th Cir. 1995); *United States v. Ard*, 731 F.2d 718, 727 (11th Cir. 1984). The defendants do not contend that their sentences are illegal.[2] Rather, they seem to argue, for two independent reasons, that the sentences are "plainly unreasonable."

The defendants first contend that the district court improperly failed to individualize their sentences because some defendants were repeat offenders, and others were not, but they all received the same six-month sentence. We disagree. Under extra-Guidelines law, the district court is not bound to respect any difference in criminal histories. Rather, the statute requires the district court to weigh many factors in its discretion. The court must consider, for instance, not only the defendants' history but also the "need for the sentence imposed . . . to promote respect for the law [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)-(B). Each defendant here made a defiant political statement at sentencing, effectively promising to break the law again. It was not unreasonable for the district court to conclude that a six-month sentence was necessary to serve the statutory objectives, whatever the defendants' individual criminal histories.

---

[2] The sentences imposed here were six months' imprisonment and a $3000 fine; this is within the statutory six-month imprisonment-term limit and under the $5000 maximum fine. *See* 18 U.S.C. § 1382; 18 U.S.C. § 3571(b)(6).

The defendants also complain that the district court imposed fines without a finding as to the defendants' ability to pay. Under extra-Guidelines law, however, such a finding is not required. The district court must, of course, "consider . . . the defendant's income, earning capacity, and financial resources." 18 U.S.C. § 3572(a)(1). There is no suggestion in the record that the court failed to do so; rather, it seems that the court made a calculated decision to impose the fine — whatever the defendants' ability to pay — in hope of dissuading the protesters from future trespassing. The court offered to remit the fine for each assertedly indigent defendant who would make a written representation to the court that he or she would not reenter Fort Benning; all the defendants declined this offer. While this approach may be novel, it is not "plainly unreasonable." We therefore conclude that we must affirm the sentences. *See* 18 U.S.C. § 3742(f)(3).

### *Conclusion*

For the foregoing reasons, the defendants' convictions and sentences are affirmed.

AFFIRMED.