[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 14, 2010
JOHN LEY
ACTING CLERK

No. 08-17207
Non-Argument Calendar

_____

D. C. Docket No. 08-00006-CR-OC-10GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO ISLES HERNANDEZ,
a.k.a. Alfredo Hernandez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 14, 2010)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Alfredo Isles Hernandez appeals his convictions and

sentences for conspiring to manufacture and possess with intent to distribute 100 or more kilograms of marijuana and 100 or more marijuana plants, in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) (Count One), and with manufacturing and possessing with intent to distribute 100 or more kilograms of marijuana and 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) and 18 U.S.C. § 2 (Count Two).

After review, we affirm Hernandez's convictions and sentences.

## I. BACKGROUND

On January 10, 2008, a grand jury issued a two-count indictment against Hernandez and five codefendants – Teresita E. Mena, Miguel R. Castellano-Rodriguez, Francisca Marrero-Soca, Pedro Correa, and Hanoy Capdevilla. Count One charged the defendants with conspiring to manufacture and possess with intent to distribute 100 or more kilograms of marijuana and 100 or more marijuana plants, beginning on an unknown date and continuing through November 20, 2007, in Sumter County and Lake County, Florida. Count Two charged the defendants with manufacturing and possessing with intent to distribute 100 or more kilograms of marijuana and 100 or more marijuana plants, on or about November 20, 2007, in Sumter County and Lake County, Florida.

On July 24, 2008, Hernandez appeared at a plea hearing in the district court

2

where he attempted to plead guilty to his involvement in the drug operations. Hernandez admitted his alleged involvement in drug trafficking operations at a house in Center Hill, Florida, in Sumter County (the "Center Hill House"). Hernandez denied, however, his alleged involvement in the drug operations at a house, which he owned, on Groveland Farms Road in Groveland, Florida, in Lake County (the "Groveland Farms House"). Hernandez stated that although he owned the Groveland Farms House, he was unaware of the marijuana grow operation in the house. The district court refused to accept Hernandez's plea, finding there was an insufficient factual basis to accept his plea to both counts of the indictment.

The case proceeded to jury trial against defendants Hernandez and Mena. The remaining codefendants – Castellano-Rodriguez, Marrero-Soca, Correa, and Capdevilla – each pled guilty to Count One of the indictment. Castellano-Rodriguez, Marrero-Soca, and Capdevilla testified against Hernandez and Mena at trial.

In opening statements, Hernandez acknowledged that he was involved in the marijuana operations at the Center Hill House but again denied having any involvement in the events at the Groveland Farms House.

The government's first witness, Detective Edward Fritz, testified that he was involved in the preliminary investigation of the events at the Center Hill House.

3

Specifically, Detective Fritz identified the Center Hill House property and stated he participated in a fly-over of the house. The government's next witness, Detective Angela Wilkinson, testified that she too was involved in the investigation of the Center Hill House property. On November 19, 2007, Wilkinson saw defendant Hernandez leave the Center Hill House. The same day, Groveland police officers followed Hernandez's truck and stopped it for having illegal window tinting. Hernandez, Capdevilla, and Correa were in the truck. Detective Wilkinson arrived and assisted the Groveland police officers in searching the truck after she smelled the odor of marijuana emanating from the truck. Wilkinson found soil, pipes, duct-work, and other implements useful in operating a marijuana grow house, and paperwork that showed that Hernandez had deposited $20,000 into a bank account in Costa Rica and had $250,000 on deposit in another bank.

Law enforcement officers executed a search warrant at the Center Hill House on November 20, 2007. Defendants Hernandez, Mena, Capdevilla, Correa, and Castellano-Rodriguez were in the house at the time. The detectives found a fully-functional marijuana growing operation, with water circulation pumps, fertilizer, 1000-watt lights, electric transformers, timers, extra air-conditioning units, tubing, drain pans, and filtering equipment. Some marijuana already had been harvested, and law enforcement agents found stalks, dried plants, stems, and bags of

4

marijuana buds. The marijuana seized at the Center Hill House from the unharvested plants weighed 104 kilograms, and law enforcement agents found a total of 70 marijuana plants, 38 of which had been harvested.

Codefendant Capdevilla then testified that he worked for Hernandez and lived in the Groveland Farms House, which Hernandez owned. Hernandez, with Capdevilla's help, converted three rooms of Hernandez's Groveland Farms House to grow marijuana. Capdevilla agreed to tend to the 72 marijuana plants that Hernandez had installed there, in exchange for Capdevilla's living at the house rent-free and getting twenty-five percent of the gross proceeds from the sale of the marijuana. Hernandez instructed Capdevilla to claim that he alone owned the marijuana should he be arrested, and Hernandez promised to hire an attorney to represent Capdevilla in that circumstance.

Codefendants Marrera-Soca and Castellano-Rodriguez next testified that Hernandez proposed that they purchase a house to grow marijuana and provided them $35,000 for the down payment and to reduce their credit card debt. After confirming the house was satisfactory for use as a grow house, Marrera-Soca and Castellano-Rodriguez bought the Center Hill House. Hernandez installed equipment to grow marijuana and bypass cables to obtain unmetered electricity. Hernandez brought marijuana plants into the Center Hill House. Hernandez and

5

Castellano-Rodriguez agreed that if Castellano-Rodriguez took care of the marijuana plants, he would received a share of the net profits from the plants, which Castellano-Rodriguez believed would amount to about $30,000. Hernandez instructed Castellano-Rodriguez that if the police came, he should claim the marijuana belonged to him alone.

The government also introduced into evidence items obtained from the Groveland Farms House, which included another fully-operational marijuana growing operation, with electric transformers, fertilizer, high-voltage lights, and 72 mature marijuana plants.

During the government's case at trial, Hernandez objected to the admission of a receipt document showing he purchased a vehicle in 2006, and he requested a sidebar discussion. The district court denied Hernandez's request for a sidebar and ordered the prosecutor to describe the document in the jury's presence. The prosecutor stated:

> This is a vehicle that was purchased in 2006. There are going to be receipts that go back through 2006, consistent with the marijuana activity. This would show an asset purchased during the time that the Government would contend and submit is during the period of marijuana activity, perhaps not as to the two grow houses, but the conspiracy charge is from a date uncertain, and we have the receipts going back to previous dates.

The district court then sustained Hernandez's objection to the exhibit and

6

instructed the jury: "Ladies and gentlemen, with regard to the matters which were referred to by Government Counsel as being related to a vehicle in the Lake Stuart residence,[1] you will disregard any of the comments of counsel with regard to that item and that exhibit."

Hernandez subsequently moved for a mistrial based on the prosecutor's comments, arguing that the government's "proffer in front of the jury implies [Federal Rule of Evidence] 404(b) evidence, prior existing collateral criminal activity." The district court implicitly denied Hernandez's motion by ordering the prosecutor to proceed.

At the close of the government's case, Hernandez renewed his motion for a mistrial. The district court confirmed its prior ruling and denied Hernandez's motion.

Hernandez's counsel also stated to the district court, outside the presence of the jury, that the evidence was sufficient for both charges to go to the jury, and he would not be making a "frivolous" motion for acquittal:

> Judge, under the rules, counsel has a responsibility to address the issue of a judgment of acquittal, and very candidly with the Court, I believe that the testimony that

---

[1]The Presentence Investigation Report states that Hernandez also owned a residence on Lake Stewart Drive in Groveland, Florida, at which he and Mena resided. Law enforcement officers executed a search warrant upon the Lake Stewart residence and found chemicals and other items indicative of a marijuana grow operation, but not marijuana itself.

we've heard here today, in the light most favorable to the Government, certainly would allow a jury to consider the factual basis of those allegations concerning the two charges that we've heard here today. So I'm not going to extend the Court's time on making a frivolous motion.

So, I will acknowledge that the jury does, in fact, have sufficient factual basis to make a determination as to whether or not Alfredo Hernandez did, in fact, conspire with these other people to grow 100 plants or more, that aspect of it.

In its final instructions to the jury, the district court reminded the jury that it must "make [its] decision only on the basis of the testimony and the other evidence" and that "anything the lawyers say is not evidence in the case."

The jury found both Hernandez and Mena guilty on both counts. The verdict form reflects the jury made specific findings that the offenses charged in both Counts One and Two involved 100 kilograms or more of marijuana and numbered 100 or more marijuana plants.

The district court sentenced Hernandez to 60 months' imprisonment on both counts to run concurrently. The Presentence Investigation Report listed Hernandez's advisory guidelines sentence as 60 months' imprisonment because five years is the statutory mandatory minimum sentence for a violation of 21 U.S.C. § 841(b)(1)(B)(vii), which applies to violations of § 841(a) involving 100 kilograms or more of marijuana <u>or</u> 100 or more marijuana plants.

8

Hernandez timely filed this appeal.

## II.  DISCUSSION

**A.    Sufficiency Of The Evidence**

Hernandez does not specifically argue that there was insufficient evidence to convict him of drug charges as to the Center Hill House.  Rather, Hernandez argues the evidence was insufficient to convict him of drug activity at the Groveland Farms House, which, he argues, was essential to (1) the jury's specific findings that the two counts involved 100 or more kilograms of marijuana or 100 or more marijuana plants, and (2) the district court's imposition of 60-month statutory mandatory minimum sentences based on those drug quantities, pursuant to 21 U.S.C. § 841(b)(1)(B)(vii).  Hernandez in essence raises two issues, albeit through his sufficiency-of-the-evidence argument: (1) whether the government presented evidence sufficient to support his convictions as to the Groveland Farms House referenced in Counts One and Two; and (2) whether the district court correctly imposed 60-month statutory mandatory minimum sentences.

Hernandez did not move for a judgment of acquittal at the close of the evidence.  In fact, his counsel's statements, as quoted above, conceded that the government presented sufficient evidence for the jury to consider the two charges in the indictment and characterized a motion for acquittal as a "frivolous motion."

9

When the defendant fails to move for judgment of acquittal at the close of evidence, as in this case, this "operates as a waiver of the motion for acquittal and forecloses any review of the sufficiency of the evidence except where a miscarriage of justice would result," which requires a finding that "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." United States v. Tapia, 761 F.2d 1488, 1491-92 (11th Cir. 1985) (quotation marks omitted); accord United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998).[2]

In order to sustain a conspiracy conviction under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed to possess with intent to distribute a controlled substance; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined the agreement. United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002). To establish Hernandez violated 21 U.S.C. § 841(a)(1) as charged, the government must prove Hernandez knowingly and intentionally manufactured or possessed with the intent to distribute marijuana, all of which can be shown by direct or circumstantial

---

[2]In reviewing a claim for sufficiency of the evidence, we review the evidence in the light most favorable to the government. United States v. Thomas, 8 F.3d 1552, 1556 (11th Cir. 1993). "[T]o the extent that Appellant's argument depends upon challenges to the credibility of witnesses, the jury has exclusive province over that determination and the court of appeals may not revisit the question." United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009) (quotation marks omitted), cert. denied, __ S. Ct. __, 2009 WL 3848425 (Dec. 14, 2009) (No. 09-7574). We accept a jury's credibility determinations as long as they are not "incredible as a matter of law." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997).

evidence. United States v. Poole, 878 F.2d 1389, 1391-92 (11th Cir. 1989).

Knowledge can be shown by the surrounding circumstances. Id. at 1392.

"Constructive possession is sufficient for the possession element, and can be

established by showing ownership or dominion and control over the drugs or over

the premises on which the drugs are concealed." Id.

Hernandez has not shown the evidence on a key element of his convictions

is so tenuous that a conviction would be "shocking" and would cause a

"miscarriage of justice." To the contrary, the evidence against Hernandez was

amply sufficient to sustain his convictions on Counts One and Two.[3] For example,

codefendant Capdevilla testified he worked for Hernandez and lived in the

Groveland Farms House, which Hernandez owned. Capdevilla also stated that

Hernandez, with his help, converted three rooms of the Groveland Farms House to

grow marijuana, and Capdevilla agreed to tend to 72 marijuana plants Hernandez

installed there, in exchange for Capdevilla's living at the house rent-free and

earning twenty-five per cent of proceeds from the sale of the marijuana. This

testimony alone, and especially when combined with Hernandez's constructive

---

[3]Although the indictment alleged a marijuana conspiracy in both Lake and Sumter Counties, there is an argument that Hernandez's drug conspiracy convictions would stand even if the evidence established only drug operations in Sumter County. We need not reach that issue, as there was ample evidence to support Hernandez's involvement in the drug conspiracy in both Lake and Sumter Counties.

11

possession of marijuana through his ownership of the Groveland Farms House, was sufficient to convict him of Counts One and Two related to drug activity at the Groveland Farms House.

Hernandez argues his convictions related to the Groveland Farms House should be reversed because the only testimony connecting Hernandez to the Groveland Farms House was that of Capdevilla, who, Hernandez argues, is not credible. This argument is not persuasive. First, Capdevilla's testimony was not the only evidence linking Hernandez to the Groveland Farms House – Hernandez also was record owner of the property. Second, Capdevilla's testimony with respect to the Groveland Farms House is consistent with the testimony by Marrera-Soca and Castellano-Rodriguez regarding the Center Hill House in that it shows a consistent pattern through which Hernandez agreed to provide a portion of the proceeds from the sale of marijuana to Capdevilla, Marrera-Soca, and Castellano-Rodriguez, in exchange for their agreement to take care of marijuana in the Groveland Farms House and the Center Hill House. The jury was entitled to make credibility choices and to believe the testimony of codefendant Capdevilla. We will not disturb the jury's credibility determination unless it was "incredible as a matter of law." Calderon, 127 F.3d at 1325. Hernandez has not shown the jury's conclusion was in error.

12

Hernandez also has not shown the district court erred in computing and imposing 60-month statutory mandatory minimum sentences for Counts One and Two. The Presentence Investigation Report calculated Hernandez's total offense level as 20 and his criminal history category as I, yielding an advisory guidelines range of 33-41 months' imprisonment. However, the statutory mandatory minimum sentence for a violation of 21 U.S.C. § 841(a)(1) involving 100 kilograms or more of marijuana or 100 or more marijuana plants is 60 months. 21 U.S.C. § 841(b)(1)(B)(vii). Thus 60 months is the applicable guidelines sentence. United States v. Williams, 549 F.3d 1337, 1341 (11th Cir. 2008) ("For those situations in which the mandatory minimum exceeds the range for the entire offense level, the 'guideline sentence' would thus be the same as the 'guideline range,' even if it involves a 'range' of only one number.").[4]

The district court's imposition of a 60-month statutory mandatory minimum sentence is sufficiently supported by the evidence and the jury's verdict. The jury found Hernandez guilty of the offenses in Counts One and Two and specifically

---

[4]We normally review the factual findings underlying a district court's sentencing guidelines calculation for clear error and then review the district court's application of those facts to the guidelines de novo. United States v. Williams, 527 F.3d 1235, 1247-48 (11th Cir. 2008). Also, "'[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" United States v. Burge, 407 F.3d 1183, 1189 (11th Cir. 2005) (quoting United States v. Booker, 543 U.S. 220, 244, 125 S. Ct. 738, 756 (2005)).

13

found that both Counts One and Two involved marijuana weighing 100 kilograms or more and 100 or more marijuana plants. The evidence supported these conclusions. As we already explained, sufficient evidence connected Hernandez to the drug operations at the Groveland Farms House, meaning Hernandez's offenses involved 104 kilograms of marijuana and 142 marijuana plants. Even if we were to adopt Hernandez's argument and assume he was not involved in the grow operation at the Groveland Farms House, the evidence still supported the district court's imposition of 60-month statutory mandatory minimum sentences because marijuana seized at the Center Hill House alone weighed 104 kilograms. Hernandez has not shown any error in the district court's imposition of 60-month mandatory minimum sentences.

## B.    Prosecutor's Comments

We review a district court's refusal to grant a mistrial for abuse of discretion. United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001). The "trial judge has discretion to grant a mistrial since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Delgado, 321 F.3d 1338, 1346-47 (11th Cir. 2003) (internal quotation marks omitted). A defendant must show substantial prejudice in order to be granted a mistrial. United States v. Chastain, 198 F.3d 1338, 1352 (11th Cir. 1999). "This

occurs when there is a reasonable probability that, but for the [government's] remarks, the outcome of the trial would have been different." United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007), cert. denied, 552 U.S. 899, 128 S. Ct. 218 (2007). We consider an appellant's mistrial motion in the context of the entire trial and in light of any curative instruction given by the district court. Id. "If a district court issues a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Diaz, 248 F.3d at 1101 (internal quotation marks omitted).

Hernandez argues the government's proffer regarding the vehicle Hernandez purchased in 2006, the evidence of which ultimately was excluded by the district court, prejudiced him enough to require a mistrial. We disagree. The prosecutor's inadmissible statement about Hernandez's 2006 automobile purchase was made near the end of the government's case after most other evidence was admitted. The government's statement was limited to a single item of evidence which bore little relation to the rest of the government's case. Further, the district court immediately gave a curative instruction to the jury that they were to "disregard any of the comments of counsel with regard to that item and that exhibit," and the district court twice told the jury that statements made by the lawyers were not evidence. In light of these circumstances and the extensive evidence supporting

15

Hernandez's convictions, the district court did not abuse its discretion when it denied Hernandez's motion for a mistrial.

**AFFIRMED.**