[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14891

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00043-CR-CC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MACK S. SMITH,
RICHARD E. LONG,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(June 7, 2011)

Before DUBINA, Chief Judge, EDMONDSON and WILSON, Circuit Judges.

PER CURIAM:

A jury convicted Mack S. Smith and Richard E. Long of bribery of a public official, honest services wire fraud, and money laundering. On appeal, Long and Smith assert that the district court erred in allowing a witness to assert her Fifth Amendment privilege against self-incrimination to avoid testifying. Long also argues that his conviction is supported by insufficient evidence and that his sentence is procedurally and substantively unreasonable. No reversible error exists; we affirm defendants' convictions and sentences.

## I. BACKGROUND

Defendant Richard Long is a former civilian employee of the Army; he served as a Water and Petroleum Program Manager from1991 to 2004. During that time, Long reviewed contract bids and supervised contractor performance for the Army's contracts for water purification equipment and services. Long also compiled contract requests, which included a statement of the work the Army needed and an estimate on how much the contract should cost.

Defendant Mack Smith owned WATEC, a civilian contractor that provided

2

services, training, and maintenance for water-purification systems.

Long helped WATEC win contracts by providing WATEC employees with confidential information about the contracts and the government's pricing specifications before WATEC submitted its bid. WATEC would tailor its bid based on that information and set its price as close as possible to the price the government was willing to pay. This access to confidential information gave WATEC an advantage in the bidding process.

Long also frequently wrote "sole-source justifications" that allowed the government to award contracts to WATEC without going through a competitive bidding process. Instead, the government awarded the contract directly to WATEC based on Long's assertion that WATEC was the only contractor capable of performing the work.

The government awarded over $66 million in contracts to WATEC during Long's employment. During this time, Smith or WATEC made 55 payments to Long of between $1,000 and $75,000. The payments were routed to accounts held by Long, his wife, or his wife's sister. The payments to Long totaled $549,700.

Long testified that all of these payments were "loans." But no loan agreement existed, and Long never paid back any of the money. Smith also hired Long's son to work at WATEC.

A grand jury issued a 105-count indictment charging Smith, Long, and Long's wife, Debra Long, with conspiring to commit honest services mail fraud, honest services wire fraud, and bribery of a public official; and also with actually committing wire fraud, bribery of a public official, and money laundering.

At trial, the defense sought to proffer the testimony of Mary Anne Osborn, a contracting officer who worked with Long. But the government told the district court that Osborn was the target of a separate investigation and that it planned to question Osborn at trial about her own conduct that was under investigation.[1] Long moved to exclude any cross-examination about the investigation of the pertinent witness; the district court denied the motion.

When the defense called Osborn to the stand, the district court spoke with counsel for Osborn and for the parties about the proposed lines of questioning. Following this discussion, Osborn's counsel said that Osborn planned to invoke her Fifth Amendment privilege for all testimony, including direct examination. After the defense made a detailed proffer of Osborn's testimony, the trial court preliminarily concluded that Osborn could correctly invoke the Fifth Amendment about some topics but not about others.[2]

---

[1] The investigation related to Osborn's husband's receipt of payments from a company to which Osborn awarded contracts. Osborn later settled with the government.

[2] Osborn could not invoke the Fifth Amendment on her employment history; her history of contact with Long; general facts about specific contracts; WATEC's performance and

4

Two days later, after hearing Long's testimony, the district court ruled that the witness Osborn would be totally excused from testifying. The court concluded that "once testimony that would be cumulative is excluded, she could legitimately refuse to answer essentially all relevant questions."

The jury convicted Long of the bribery and wire fraud counts that occurred after July 2004 (the date when, Long stated, he had taken an ethics class and realized he was doing wrong) and of money laundering. The jury convicted Smith of bribery, wire fraud, and money laundering. The jury acquitted Debra Long of all counts. At sentencing, the District Court determined that Long had held "a high level decision-making or sensitive position" and applied a four-level sentencing enhancement. Smith and Long now appeal.

---

competence; Long's role in a certain contract; Osborn's interactions with Smith; and facts about a contracting officer that Smith hired.

The district court preliminarily concluded that Osborn would be allowed to invoke the Fifth on the contract-award process; propriety of billing methods; the influence of the task monitor on the process; corruption of the process; and the investigation into Osborn's conduct.

## II.  DISCUSSION

### A.

Defendants assert that the district court violated constitutional rights by allowing Osborn to invoke her Fifth Amendment privilege against compelled self-incrimination to avoid testifying.  Long specifically argues that Osborn's testimony would have presented critical exculpatory evidence and that excluding the evidence violated his Fifth Amendment right to due process.[3]  Smith argues that excluding the testimony violated his Sixth Amendment right to compulsory process for obtaining witnesses in his favor.[4]

Trial courts have broad discretion to resolve self-incrimination claims.  See United States v. Melchor Moreno, 536 F.2d 1042, 1050 (5th Cir. 1976); Hoffman v. United States, 71 S. Ct. 814, 818 (1951) ("It is for the court to say whether [a witness's] silence is justified . . . .").  "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked,

---

[3] Long asserts that Osborn would have testified that Long could not have improperly influenced the contract award process even if he had wanted to; that Long was competent but difficult to get in touch with; and that Smith did not understand all the pertinent contracting concepts.

[4] Smith asserts that Osborn's testimony would have supported his defense that Smith's "loans" to Long did not buy access to Army contracts.

that a responsive answer to the question . . . might be dangerous because injurious disclosure could result." Hoffman, 71 S. Ct. at 818. In deciding whether a witness is entitled to claim the privilege, the trial court may rely on its "personal perception of the peculiarities of the case" in addition to "the facts actually in evidence." Id. (quoting Ex parte Irvine, 74 F. 954, 960 (S.D. Ohio 1896)).

When a witness asserts the privilege against self-incrimination, "[a] court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." Moreno, 536 F.2d at 1049.

The district court's inquiry into the areas of testimony was sufficient to protect Defendants' constitutional rights in this case. The district court in this case inquired into the proposed testimony and cross examination. It appointed counsel for the witness and heard from counsel for all parties, several times. Defendants' counsel offered a proffer of the testimony the witness likely would have given. The government outlined the questions that it likely would have asked the witness. The trial court first pointed out certain topics that could be the subject of testimony, but later considered the issue for a second time and revised its ruling.

After inquiring into the proposed subjects of testimony, the district court noted that, if Osborn testified about the non-collateral subjects, the government

planned then to question the witness about: the ethical obligations applicable to Long, whether she knew that Long's son worked at WATEC, whether she knew of the payments to Long, and whether she would have approved the contracts if she had known this information. Answering these questions would have very likely resulted in incriminating disclosures. The court did not err in concluding that the witness was entitled to raise her Fifth Amendment privilege against self-incrimination to be excused from testifying about these proposed areas of inquiry. See Hoffman, 71 S. Ct. at 818.

In addition, the court did not err by excusing the witness from testifying about the remaining proposed subjects of testimony. The court properly concluded that any topics about which the witness could testify without fear of self-incrimination would likely be cumulative, irrelevant, or not subject to cross-examination by the government without raising Fifth Amendment issues. In these circumstances, a witness may be excused entirely from testifying. See Moreno, 536 F.2d at 1049 (noting that a witness could be excused from testifying if the court concluded "that [the witness] could legitimately refuse to answer essentially all relevant questions") (internal quotation marks and citation omitted).

The district court's decision to excuse Osborn from testifying violated no constitutional rights.

B.

We next review Long's claim that insufficient evidence existed to convict him of the acts of bribery and wire fraud in violation of 18 U.S.C. §§ 2, 201(b)(2)(A), 1343 and 1346[5] that occurred after 31 December 2004. On appeal, Long argues that "after he retired on December 31, 2004, Mr. Long had no ability to help Watec in any way . . . There was simply no evidence from which the jury could conclude that, after December 31, 2004, Mr. Long had the specific intent to act corruptly or to defraud."

Long, however, did not move for a judgment of acquittal in the district court on the counts at issue on appeal. Thus, we review his claim about the sufficiency of the evidence only for plain error. We must affirm the conviction unless a "manifest miscarriage of justice" has been shown. United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998).

Sufficient evidence supports the jury's verdict. Evidence at trial established

---

[5] 18 U.S.C. § 201(b)(2)(A) prohibits a public official from receiving "anything of value . . . in return for . . . being influenced in the performance of any official act." 18 U.S.C. § 1343 prohibits the use of wire communication to execute "any scheme or artifice to defraud." 18 U.S.C. § 1346 states that a scheme "to deprive another of the intangible right of honest services" falls within the scope of section 1343.

that Long received $549,700 in payments from Smith. In exchange, Long consistently recommended that WATEC receive lucrative government contracts. A jury could reasonably infer that Long had accepted something of value in return for being influenced in the performance of an official act in violation of section 201(b)(2)(A) and that he used wire communication to carry out a scheme to defraud in violation of section 1343.

In addition, a jury could reasonably infer that payments made and accepted after Long's retirement were deferred compensation for earlier wrongs and were part of a scheme to conceal Long's earlier acts of influencing the award of government contracts.[6] No miscarriage of justice has been shown in this case; Long's convictions are affirmed.

C.

Long also argues that his sentence is procedurally unreasonable because he did not occupy a "high level decision-making or sensitive position" that would

---

[6] That the jury acquitted Long of the conspiracy count does not preclude a conclusion that sufficient evidence existed to support a conviction for bribery and wire fraud. See United States v. Pruitt, 638 F.3d 763, 767 n.6 (11th Cir. 2011) ("Mere inconsistency of the jury verdicts cannot bolster Defendant's argument on appeal.").

justify a sentence enhancement.

The sentencing guidelines allow for a 4-level increase to a base offense level if the bribe "involved . . . any public official in a high-level decision-making or sensitive position." U.S. Sentencing Guidelines Manual § 2C1.1(b)(3) (2010). Long concedes that "[n]umerous prosecution witnesses testified that they relied on Mr. Long and his recommendations, due to his personal knowledge, experience, and expertise." But Long argues that the sentence enhancement does not apply to "the broad range of bribe recipients who exerted some special influence over a decision-making process, but specifically and only to those occupying 'a high-level decision-making or sensitive position.'" Long contends that regardless of the actual influence he commanded, he did not occupy an official position of authority.

This form over function argument is incorrect. The commentary to the sentencing guidelines state that a "'[h]igh-level decision-making or sensitive position' means a position characterized by a direct authority to make decisions for, or on behalf of, a government department . . . or by a substantial influence over the decision-making process." U.S. Sentencing Guidelines Manual § 2C1.1 cmt. n.4(A) (2010) (emphasis added). In other words, a defendant's position may be evaluated in terms of the influence that the defendant exercised.

As Long concedes, the evidence at trial established that Long wielded

11

substantial influence over the decision-making process. The district court did not err in enhancing his sentence based on his high-level decision-making position.

Long last argues that his sentence is substantively unreasonable. Long asserts that his 210-month sentence is grossly disproportionate to the nature and circumstances of the offense, Long's criminal history and characteristics, and sentences that other white-collar crime defendants have received.

The district court did not commit reversible error in sentencing Long. "[T]here is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in section 3553(a)." Id.

The district court considered both the sentencing guidelines and the 18 U.S.C. § 3553 factors before imposing a sentence. The court adopted the parties' joint recommendation that the loss amount be calculated based on the value of the total payments that Long received instead of the much greater value of WATEC's profits on the contracts.[7] The sentence that the district court ultimately imposed--a

[7] This lowered the offense level from 45 (for which the guidelines recommend life imprisonment) to 37 (for which the guidelines range is 210 to 262 months).

12

total of 210 months' imprisonment--is at the low end of the sentencing range. Long has not shown that the sentence that the district court imposed is unreasonable, and the sentence is affirmed.

## III. CONCLUSION

Defendants have shown no error in their trials or sentencing. Their sentences and convictions are AFFIRMED.

AFFIRMED.