[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14095
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cr-00205-PGB-KRS-7

VALERIY TSOY,

Defendant-Appellant,

versus

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 18, 2019)

Before WILLIAM PRYOR, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Valeriy Tsoy appeals his conviction for marriage fraud in violation of 8 U.S.C. § 1325(c).  Tsoy argues that the evidence was insufficient to sustain his conviction, because it did not support a finding that he intended to enter into a marriage for the purpose of evading immigration laws.  After thorough review, we affirm.

I.

Tsoy, a native of Kazakhstan, came to the United States in 2011 on a temporary student visa.  When his visa expired, Tsoy paid Denis Yakovlev—a sham marriage broker who arranged over one hundred fraudulent marriages before he was apprehended—to find him an American bride.  April Moore, an exotic dancer and heroin user from Brevard County, agreed to marry Tsoy because she needed the money.  Tsoy and Moore were married at a courthouse in Brevard County on July 6, 2015.

Unfortunately for the newlyweds, the Department of Homeland Security soon caught wind of Yakovlev's marriage fraud enterprise.  Yakovlev pled guilty, and in 2017, a grand jury indicted a number of his associates and customers—including both Tsoy and Moore.  Moore was convicted before Tsoy, and she decided to testify against him—even though the government promised her nothing in exchange—"[b]ecause I was found guilty for marriage fraud and my husband would like to say that he's not guilty, which is a lie."

After a two-day trial, a jury found Tsoy guilty of marriage fraud in violation of 8 U.S.C. § 1325(c).  The district court sentenced him to time served and one year of supervised release.  This appeal followed.

## II.

We ordinarily review the sufficiency of the evidence de novo, drawing all reasonable inferences and making all credibility determinations in favor of the verdict.  *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996).  Evidence is sufficient if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."  *Id.*  Here, however, because Tsoy moved for a judgment of acquittal after the government's case-in-chief but failed to renew his motion at the close of all of the evidence, he has "waived any objection to the sufficiency of the evidence."  *United States v. Bichsel*, 156 F.3d 1148, 1150 (11th Cir. 1998).  Accordingly, we will reverse his conviction only if we find "a manifest miscarriage of justice"—that is, if the evidence "on a key element of the offense is so tenuous that a conviction would be shocking."  *Id.* (quoting *United States v. Williams*, 144 F.3d 1397, 1402 (11th Cir. 1998).

To prove marriage fraud, the government had to show that (1) Tsoy "knowingly entered into a marriage" (2) "for the purpose of evading any provision of the immigration laws."  *United States v. Rojas*, 718 F.3d 1317, 1320 (11th Cir. 2013); *see* 8 U.S.C. § 1325(c).  Tsoy challenges the sufficiency of the evidence as

to the second element only.  There was ample evidence, however, that Tsoy married Moore with the purpose of evading federal immigration laws.

As Moore testified at trial, she and Tsoy met "approximately two months prior" to their wedding day, at a meeting with Yakovlev and his associates.  They discussed the terms of the arrangement, under which Moore would "receive $800 upon going to the courthouse" to marry Tsoy, and $5,000 more for participating in an interview with an immigration officer a few months later.  They would "stay married for four years" or so, and then—once Tsoy became a lawful permanent resident—Moore would receive another "large sum of money" and "divorce" him.

Moore further testified that she and Tsoy spent just "two or three hours" together before getting married in July 2015.  The morning of her wedding, Moore was awakened by her then-boyfriend—one of Yakovlev's associates—who "yelled at" her to "hurry it up, get ready, you have a marriage to do."  Tsoy and Moore got married in the courthouse, while Moore's boyfriend waited outside in the car.  No family members from either side attended the wedding, and Tsoy, Moore, and Moore's boyfriend went to a strip club together after the ceremony.

Over the next year or so, Moore made multiple trips to New York to get to know Tsoy and prepare for their immigration interview.  On Yakovlev's instructions, they posed for pictures together—with Moore's family at Christmas, at tourist sites, and in Tsoy's apartment—for a photo album to show the

4

immigration official.  When the time came, Tsoy and Moore aced the interview.  Moore "was paid $5,000 right afterwards and went shopping."

At trial, Tsoy tried to argue that he married Moore for love.  As evidence, Tsoy proffered photos of him and Moore looking "happy" and "having a good time."  But the jury apparently credited Moore, who testified that she barely knew Tsoy on their wedding day and that the photos were staged in order to dupe the immigration official.  Moore also testified that she never had "a romantic relationship" or "any sexual relationship" with Tsoy, and that he "never really wanted to get to know" her—even "as a friend."  She testified that Tsoy knew that she was romantically involved with two other men during their marriage, and indeed "encouraged" her to date his next-door neighbor.  Moore's now ex-boyfriend, who was also convicted for his part in Yakovlev's enterprise, testified that he and Moore "slept together" the night that she married Tsoy, while Tsoy was in the spare bedroom.  It was reasonable for the jury to conclude that Tsoy married Moore not for love, but for a green card.

It does appear that Tsoy spent some time in Florida, and that he would sometimes drive Moore from Florida to her parents' home in North Carolina when she was having boyfriend problems.  He would also periodically give her money and drive her places so that she could buy drugs.  But Moore made clear that Tsoy did not come to Florida in order to visit her, and in fact primarily visited Florida to

help his own friends find wives through Yakovlev. And as the government explained, Tsoy may have "kept his eye on her, because he needed her to complete the process of getting a green card"—because if Moore "disappeared, was arrested, or even died, he would have had a great difficulty in securing his immigration green card." Drawing that inference in favor of the verdict, this evidence does not undermine the jury's conclusion.

On appeal, Tsoy shifts gears and emphasizes that he never finished the green card application process—on the theory that he did not "trick" or "defraud" the government because he never actually received a green card. But fraudulently *obtaining* a green card is not an element of marriage fraud, which criminalizes merely *entering into a marriage* for the *purpose* of evading immigration laws. Marriage fraud is not a "continuing offense," and if Tsoy "entered into a marriage with the purpose of evading the immigration laws" on July 6, 2015, "he completed the crime of marriage fraud on that date." *Rojas*, 718 F.3d at 1320. Even if Tsoy never followed through—and even if he had a change of heart about breaking the law—all that mattered was his intent at the time that he entered into the marriage.

In light of all of the evidence, it is hardly "shocking" that the jury found Tsoy guilty of marriage fraud beyond a reasonable doubt. We find no manifest miscarriage of justice in upholding Tsoy's conviction.

**AFFIRMED.**

6