[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15208
Non-Argument Calendar
_____

D.C. Docket No. 3:18-cr-00059-RV-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee.

versus

ABBISINA HEPBURN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 7, 2020)

Before WILSON, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Abbisina Hepburn appeals her convictions and 188-month sentence imposed after she pleaded guilty to four charges related to a drug conspiracy and other drug offenses.  First, she challenges the validity of her plea agreement, asserting that she did not knowingly and voluntarily enter the plea.  Second, she contends that she was sentenced based on a greater quantity of drugs than should have been attributed to her.  Third, she attempts to adopt an argument from her co-defendant's brief—that her sentence was improperly enhanced for maintaining premises for the purpose of manufacturing or distributing drugs.  For the following reasons, we affirm.

## I

## A

The underlying drug conspiracy can be summarized as follows.[1]

Beginning in November of 2015, Ms. Hepburn and her husband, Damian Hepburn, began traveling to Destin, Florida to distribute hydromorphone and oxycodone.  They would first obtain fraudulent prescriptions from a woman in Miami Gardens, Florida.  They would then travel to the Jares Pharmacy in Sebring, Florida, where pharmacist Angela Clark would fill the prescriptions.  Ms. Clark would give the pills to Ms. and Mr. Hepburn, who would then unlawfully distribute them.  The prescriptions were written by Dr. Tony Diaz.

---

[1] These facts are drawn from Ms. Hepburn's factual proffer, portions of the presentence investigation report that Ms. Hepburn did not object to, and Agent Barry Hatton's undisputed testimony at the sentencing hearing.

According to Ms. Clark, the Hepburns filled about 10 to 11 prescriptions per week for 140 or 150 oxycodone or hydromorphone tablets.  They took turns going to the pharmacy.  After picking up the pills, Ms. Hepburn would stay at either an apartment in Destin, or one of two hotels in the area, while selling them.  When she needed more prescriptions, she would travel back to Miami Gardens to re-supply, repeating this process frequently.

**B**

On August 7, 2018, a federal grand jury charged Ms. Hepburn in a superseding indictment with one count of conspiracy to distribute and possess with intent to distribute hydromorphone and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; two counts of distribution of hydromorphone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of possession with intent to distribute hydromorphone and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  It also charged Mr. Hepburn with conspiracy and other drug-related offenses and Ms. Clark with conspiracy.

Ms. Hepburn pleaded guilty to all four charges against her pursuant to a written plea agreement.  The plea agreement, which was signed by both Ms. Hepburn and her counsel, provided "[t]hat by voluntarily pleading guilty," Ms. Hepburn "knowingly waives and gives up constitutional rights which attend a Defendant on trial in a criminal case."  It went on to explain that these rights include: "the right to

3

plead not guilty; the right to have a jury or judge determine guilt on the evidence presented; the right to compel the government to prove guilt beyond a reasonable doubt; the right to confront and cross-examine witnesses; the right not to be compelled to incriminate oneself; the right to testify; the right to present evidence; and the right to compel the attendance of witnesses."

At the plea colloquy, the district court questioned Ms. Hepburn to ensure she understood that she was waiving these rights. Ms. Hepburn confirmed under oath that she did. She testified that she carefully read the plea agreement and factual proffer with her attorney and understood the terms and conditions of the agreements and the consequences of her plea. She further testified that no one made any promises to her or used threats, force, pressure, or intimidation to induce her to plead guilty. She also confirmed that she was satisfied with her attorney's representation.

The district court found Ms. Hepburn to be "alert and intelligent." It also found that she understood "the nature of the charges" against her, and "realize[d] and appreciate[d] the consequences of a plea of guilty to those charges." Accordingly, the district court concluded that she made the decision to plead guilty "freely knowingly and voluntarily" and accepted her plea.

## C

The probation officer completed a presentence investigation report ("PSI"). The PSI determined the drug quantity applicable to Ms. Hepburn based on the

prescriptions that were issued in Dr. Tony Diaz's name, which, according to the government, were all fraudulent.  Using the drug equivalency table, the PSI attributed 4,628.48 kilograms of marijuana to Ms. Hepburn.

Prior to the sentencing hearing, Ms. Hepburn did not object to the PSI's drug weight computation.  She did, however, object to other enhancements, and the government called Florida Department of Law Enforcement Agent Barry Hatton to testify in response to those objections at the sentencing hearing.

After Agent Hatton's testimony, Ms. Hepburn's counsel asked the district court "to consider that the [drug] weight quantity is somewhat overstated because each of Mr. Hepburn and Ms. Hepburn are being held accountable for all the weight for all the drugs that were obtained from that pharmacy, but the two of them basically acted and worked independent of one another."

The district court noted that Ms. Hepburn had not objected to the weight calculation in the PSI.  It then overruled the *ore tenus* objection, explaining that both Ms. and Mr. Hepburn could be accountable for the full amount of fraudulent prescriptions obtained from the pharmacy because "they were basically in this together."

The district court applied sentencing enhancements for being a leader in the conspiracy (reduced by the district court to two levels), using a minor in the commission of the offense, and maintaining a property in Dentin for the purpose of

distributing drugs.  It then determined that Ms. Hepburn's advisory range under the Sentencing Guidelines was 210–262 months' imprisonment, and imposed a below-guidelines sentence of 188 months' imprisonment as to each count, to be served concurrently.  At the close of the hearing, the district court asked the parties, pursuant to *United States v. Jones*, 899 F.2d 1097, 1102–03 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc), if they had "any objections that need[ed] to be amplified further on the record[.]" The parties responded that they did not.

This appeal followed.

## II

Ms. Hepburn argues, for the first time on appeal, that she did not knowingly and voluntarily enter the plea agreement because she felt coerced into pleading guilty and believed that going to trial was not an option.  We are not persuaded.

Generally, we review the voluntariness of a guilty plea *de novo*.  *See United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993).  But where, as here, a defendant raises a Rule 11 violation for the first time on appeal, we review only for plain error.  *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). To establish plain error, a defendant must show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights.  *See United States v. Olano*, 507 U.S. 725, 732 (1993).  If those requirements are met, we may exercise discretion and

6

correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citations and internal quotation marks omitted).

To satisfy due process, a guilty plea must be entered knowingly and voluntarily. *See Moriarty*, 429 F.3d at 1019. A court accepting a guilty plea must comply with Rule 11 and ensure that the defendant "(1) enters [her] guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of [her] plea." *Id.* "There is a strong presumption that the statements made during the [plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

Here, the district court complied with Rule 11, and confirmed that no one made any promises or used threats, force, pressure, or intimidation to induce Ms. Hepburn into making the plea. It further confirmed that Ms. Hepburn carefully reviewed the plea agreement and factual proffer with her attorney and understood the nature of the charges and consequences of her plea. Indeed, the district court explained Ms. Hepburn's rights at length—including her right to a trial by jury, to be represented by counsel at trial, to present evidence, to confront the government's witnesses, and to subpoena witnesses—ensuring that she understood each constitutional right she was waiving. In light of this record, Ms. Hepburn's conclusory assertions on appeal that she "felt coerced" and believed "going to trial

was not an option" are unconvincing.  The district court did not plainly err in accepting Ms. Hepburn's plea.

## III

Ms. Hepburn next argues that the district court erred in sentencing her based on the drug quantity attributed to her in the PSI.  Specifically, she contends that she should not have been held accountable for the total amount of fraudulent prescriptions filled by the Jares Pharmacy, because she was not aware of or involved in obtaining all the prescriptions.  We disagree.  We note that Ms. Hepburn does not challenge the accuracy of the total drug quantity set out in the PSI, or that all prescriptions issued in the name of Dr. Diaz by Jares Pharmacy were fraudulent.  Instead, she asserts that she should not be held accountable for the full drug quantity because she and Mr. Hepburn worked independently.

We generally review a district court's determination of the drug quantity attributable to a defendant for clear error.  *See United States v. Azmat*, 805 F.3d 1018, 1046 (11th Cir. 2015).  But when a defendant fails to raise an objection to the calculation of his sentence before the district court, we review for plain error.  *See United States v. Dixon*, 901 F.3d 1322, 1347 (11th Cir. 2018).

The government submits that we should review for plain error because Ms. Hepburn declined to reassert or reargue her objection to the drug quantity during the *Jones* inquiry after the district court's pronouncement of her sentence.  We have

8

stated, however, that *Jones* is satisfied so long as the district court clearly understood the party's position and specifically rejected it. *See United States v. Weir*, 51 F.3d 1031, 1033 (11th Cir. 1995) ("*Jones* provides for post-sentence objections because new issues may arise between the pre-sentence report and the imposition of sentence. If the relevant objection is raised after the presentation of the report, however, but before the actual imposition of the sentence, *Jones* is satisfied."). The record reflects that the district court understood and addressed Ms. Hepburn's objection. Thus, we review for clear error.

There is no clear error here. "[W]hen a district court sentences a member of a 'jointly undertaken criminal activity,' it may consider the conduct of 'others that was . . . in furtherance of the jointly undertaken criminal activity' and 'reasonably foreseeable in connection with that criminal activity.'" *Dixon*, 901 F.3d at 1349 (quoting U.S.S.G. § 1B1.3 cmt. n.3).

The district court determined that the total amount of fraudulent prescriptions written by Dr. Diaz was foreseeable to Ms. Hepburn, because she and Mr. Hepburn "were basically in this together." This finding was based on the undisputed testimony of Agent Hatton at the sentencing hearing, the paragraphs of the PSI setting forth the facts of the underlying conspiracy, to which Ms. Hepburn did not object, and the factual proffer that accompanied Ms. Hepburn's plea agreement. *See United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) ("The district court's

factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing.").

The evidence established that Ms. Hepburn was a leader in the conspiracy, that the conspiracy lasted for over two years, and that collectively the Hepburns filled about 10 to 11 prescriptions per week for 140 or 150 oxycodone or hydromorphone tablets. Even if Ms. and Mr. Hepburn took turns picking up the prescriptions, the evidence reflects that they were in it together from the outset, and thus the prescriptions that Mr. Hepburn obtained were reasonably foreseeable to Ms. Hepburn. *See Dixon*, 901 F.3d at 1349 (determining that the district court did not clearly err in holding the "leader in a broad drug trafficking-conspiracy" responsible for the drug quantity sold by his co-conspirators). The district court therefore did not clearly err in sentencing Ms. Hepburn based on the total drug quantity involved in the conspiracy.

## IV

Finally, Ms. Hepburn purports to adopt an argument that Mr. Hepburn raised in his appeal—that the district court erred in applying a two-level sentence enhancement, under U.S.S.G. § 2D1.1(b)(12), for maintaining a property for the purpose of manufacturing or distributing controlled substances. *See United States v. Hepburn*, 776 F. App'x 649 (11th Cir. 2019). This issue was not properly raised.

Pursuant to Federal Rule of Appellate Procedure 28(i), "[i]n a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief." Fed. R. App. P. 28(i). But Ms. and Mr. Hepburn are no co-appellants, nor were their appeals consolidated. Rule 28(i) "does not permit such adoption by reference between cases[.]" *United States v. Bichsel*, 156 F.3d 1148, 1150 n.1 (11th Cir. 1998). Though the Hepburns were charged in the same superseding indictment and entered their pleas at the same plea colloquy, they were not sentenced together. It is not clear how Mr. Hepburn's argument raised in his appeal of a separate sentencing proceeding would relate to the instant appeal. Although Ms. Hepburn asserted in her initial brief that she would file a separate motion to adopt this issue, no motion was ever filed. Accordingly, we do not consider whether the district court properly imposed this sentence enhancement.[2]

## V

For the foregoing reasons, we affirm Ms. Hepburn's convictions and sentence.

**AFFIRMED.**

---

[2] We further note that Mr. Hepburn's argument in his appeal that the district court erred in applying a two-level enhancement to his sentence for maintaining premises for the purpose of manufacturing or distributing controlled substances has since been rejected, and his sentence was affirmed. *See Hepburn*, 776 F. App'x at 650. So, even if Ms. Hepburn properly adopted this argument, it alternatively fails on the merits.

11