[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

-----------------------------------------

No. 05-14155
Non-Argument Calendar

-----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 26, 2006
THOMAS K. KAHN
CLERK

D.C. Docket  No. 05-80006-CR-KAM

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

BLADYMIR SANTIAGO,

                                        Defendant-Appellant.

-----------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

-----------------------------------------------------------------

**(October 26, 2006)**

Before EDMONDSON, Chief Judge, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Bladymir Santiago ("Santiago") appeals his arson conviction for

maliciously damaging or destroying, by means of fire, property used in interstate

commerce or in an activity affecting interstate commerce, in violation of 18 U.S.C.

§ 844(i).  No reversible error has been shown; we affirm.

At trial, the government offered substantial evidence to prove Santiago intentionally burned down Superior Mulch's bagging warehouse in Palm Beach County, Florida by using a lighter to ignite pallets of cardboard boxes containing plastic bags.  This evidence included expert testimony from Tom Fucci ("Fucci") and Stephen Hill ("Hill") on the origins and cause of the fire; evidence of the conditions at the warehouse; a surveillance video showing an individual matching Santiago's description entering the warehouse, walking toward the area where the fire began, and leaving just as the fire ignited; testimony concerning Santiago's demeanor and dress before and after the fire; an admission by Santiago that he entered the warehouse that night while drunk and may have started the fire accidentally by dropping a cigarette; and testimony that Santiago had vandalized the warehouse two months earlier.  On appeal, Santiago argues (1) the district court erred by admitting testimony from both of the government's expert witnesses; (2) the district court erred by allowing certain prior bad act evidence; and (3) his conviction was based on insufficient evidence.

The district court did not err by admitting the testimony of the government's two expert witnesses, Fucci and Hill.  We review a district court's determination of the admissibility and reliability of expert testimony under Rule 702 for abuse of

discretion.  <u>United States v. Frazier</u>, 387 F.3d 1244, 1258 (11th Cir. 2004).  An

abuse of discretion exists only when "the district court has made a clear error of

judgment, or has applied the wrong legal standard."  <u>Id.</u> at 1259.  In <u>Daubert v.

Merrell Dow Pharms., Inc.</u>, 113 S.Ct. 2786 (1993), and <u>Kumho Tire Co. v.

Carmichael</u>, 119 S.Ct. 1167 (1999), the Supreme Court offered a non-exhaustive

list of factors that a court should consider in fulfilling its gate-keeping function

under Rule 702:

> (1) whether the expert's theory can be and has been tested; (2) whether
> the theory has been subjected to peer review and publication; (3) the
> known or potential rate of error of the particular scientific technique;
> and (4) whether the technique is generally accepted in the scientific
> community.

<u>Frazier</u>, 387 F.3d at 1262 (citations omitted).  Our three-part analysis under Rule

702 considers whether

> (1) the expert is qualified to testify competently regarding the matters he
> intends to address; (2) the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined by the sort of inquiry
> mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact,
> through the application of scientific, technical, or specialized expertise,
> to understand the evidence or to determine a fact in issue.

<u>Id.</u> at 1260 (citations omitted); <u>see</u> Fed. R. Evid. 702.

The trial court did not abuse its discretion by admitting Fucci's expert

testimony. Fucci had extensive experience and training in fire investigations,

3

which qualified him as lead investigator of the fire.[1]  Also, Fucci systematically examined the scene and used the scientific method to identify the fire's origin and to rule out any accidents or acts of God that might have caused the fire.  After examining the building, reviewing the surveillance video, and conducting interviews, Fucci concluded that the fire was incendiary. Fucci's findings were subject to review by his co-workers and supervisors.  In the Daubert hearing, the trial court found that Fucci's process of elimination was commonly used in the field and was not disallowed by the applicable guidelines.[2]  The court allowed Fucci to testify about his investigation but not that the fire was set intentionally. The trial court was within its discretion to find that the facts and methods on which Fucci relied to reach his opinion were of the kind reasonably relied upon by experts in the field of fire investigation.

The testimony of the government's second expert, Hill, was also properly admitted.  Hill conducted a series of experiments to recreate the scene and to test both prosecution and defense theories about the fire's cause and timing.  These

---

[1]That Fucci was not a certified arson investigator is inconclusive of whether he qualifies as an expert. Rule 702 lists a number of factors a court should consider, including knowledge, skill, experience, training, and education. Fed. R. Evid. 702.

[2] Santiago points to the National Fire Protection Association's Guide for Fire and Explosion Investigations to argue that a process of elimination is not an appropriate method of determining a fire's causation. This handbook, however, does not preclude this method as a possible investigatory technique and actually describes the limited circumstances in which it may be entirely appropriate.

4

tests involved attempts to use cigarettes in different positions and later an open flame to ignite cardboard, plastic wrap, bags, and tape.[3] Hill's experiments were duplicable, his results were peer-reviewed, and his methodology was generally accepted in the field. Based on these tests, the surveillance video, and other relevant expert literature, Hill concluded to a reasonable degree of scientific certainty that a cigarette could not have ignited the fire in the time alleged by the defense. Considering all of these factors, Hill's testimony was admissible under Daubert.

Santiago also argues that the testimony of Fucci and Hill was irrelevant, misleading, and unduly prejudicial in violation of Fed. R. Evid. 401, 403. The trial court was, however, within its discretion to determine that this expert testimony had at least some probative value because both experts testified on the likely cause and origin of the fire, which were essential elements of the trial. Also, the testimony was not misleading or unduly prejudicial because neither expert testified that Santiago intentionally started the fire; instead, both testified about the results of their scientific investigations and experiments.[4] Thus, the trial court was

---

[3]Despite Santiago's complaints, the trial court appropriately determined that any differences in conditions between the warehouse and Hill's laboratory were negligible and otherwise harmless because it was likely easier to start a fire in the laboratory.

[4]We also reject Santiago's assertion that showing to the jury a video in which Hill ignites the materials with a butane lighter was substantially and unfairly prejudicial. This experiment was one

within its discretion to admit the expert testimony of both Fucci and Hill.

In addition, the trial court did not err by allowing prior bad act evidence that Santiago had vandalized the property just two months earlier. Rule 404(b) prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show conformity therewith." Fed. R. Evid. 404(b). But, such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. That the defendant committed such prior bad acts must be proven by a preponderance of the evidence. Huddleston v. United States, 108 S.Ct. 1496, 1501 (1988).

The government introduced testimony that the person on the surveillance video the night of the fire was the same person who entered the warehouse and vandalized a water cooler and microwave two months earlier. A jury could reasonably conclude that, by a preponderance of the evidence, this testimony showed Santiago previously had vandalized the property. Such evidence was indicative of Santiago's motive, intent, identity, and lack of accident in committing the current offense. That Santiago had committed an act against the same property of the same company just two months before the fire was

---

of several experiments that Hill used to test both prosecution and defense theories of the cause and timing of the fire. Hill's conclusion that the fire was incendiary was neither irrelevant nor prejudicial.

substantially probative of whether he committed this arson. The trial court, therefore, did not abuse its discretion by allowing evidence of this prior bad act.

Furthermore, Santiago's conviction was based on sufficient evidence. Although Santiago made a motion for judgment of acquittal after the government rested, he did not renew the motion at the close of evidence or after the jury returned its verdict. Therefore, he waived his objection to the district court's denial of the motion; and we review the sufficiency of the evidence for manifest injustice only. United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998). Following this standard, we must determine "if the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (citations and quotations omitted).

In this case, the evidence is not so lacking that Santiago's conviction is shocking. The evidence at trial demonstrated (1) Santiago was the only person the surveillance video showed entering the warehouse just before the fire; (2) the fire was visible as Santiago was leaving; (3) at the time of his arrest two days later, Santiago was wearing the same clothes and possessed a butane lighter but no cigarettes; (4) the application of a flame to the materials in the warehouse was the most likely cause of the fire; (5) the fire destroyed the warehouse; and (6) the warehouse was used in an activity affecting interstate commerce. Based on this

evidence, a jury determination that each of the elements of the offense was proved beyond a reasonable doubt is not shocking.  We conclude that the jury's determination of guilt presents no manifest injustice because sufficient evidence supports Santiago's conviction.

**AFFIRMED.**