Dewayne **KILGORE** and Christy **Kilgore**, Plaintiffs,

v.

**RECKITT BENCKISER,**
**INC.,** Defendant.

**Civil Action No. 3:10–CV–196–TCB.**

United States District Court,
N.D. Georgia,
Newnan Division.

Jan. 18, 2013.

---

Jefferson Cary McConnaughey, Cozen & O'Connor, Atlanta, GA, for Plaintiff.

Lisa R. Richardson, Stevan Anthony Miller, Drew Eckl & Farnham, Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on Defendant Reckitt Benckiser, Inc.'s ("RBI") motion to exclude the testimony of Plaintiffs' expert, Richard I. Underwood [31].

## I. Background

On September 2, 2008, Plaintiffs Dewayne and Christy Kilgore returned to their home to discover that a fire had started in their basement. A subsequent investigation revealed that the fire originated at an outlet in the basement, where an Air Wick brand air freshener manufactured by RBI had been plugged in.

On December 31, 2010, the Kilgores filed this action against RBI, alleging that its air freshener started the fire. They bring tort claims based on theories of strict liability and negligence, and they seek to recover the damages they incurred as a result of the fire. In support of their claims, the Kilgores have proffered the expert testimony of Richard I. Underwood, who opines that fragrance oil vapors from RBI's air freshener contaminated the outlet, leading to degradation and shorting across the outlet, ultimately causing the fire. RBI now moves to exclude Underwood's testimony.

## II. Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has made clear that Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of all expert testimony. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n. 7, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). In particular, district courts are "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir.2007).

In performing this gatekeeping function, a district court must make "a rigorous three-part inquiry" into whether

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier,* 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998)). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *Id.* The burden is on the proponent of the expert opinion to show that each requirement is met. *Id.*

In this case, RBI argues that Underwood's testimony should be excluded because it is unreliable. RBI does not challenge Underwood's qualifications, nor does it argue that his testimony would be unhelpful to the jury (assuming it is reliable). However, to fully perform its gatekeeping function, the Court will briefly address Underwood's qualifications and the helpfulness of his testimony before turning to its reliability.

## A. Qualification

Underwood has a bachelor of science degree in electrical engineering from the University of Kentucky, and he is licensed as a master electrician and professional engineer. Since 1974, he has worked as a consultant for Applied Technical Services, Inc. ("ATS"), investigating fires suspected to have electrical causes.

He has also attended and given presentations at various seminars on fire investigations. Based on this education, training and experience, the Court finds Underwood qualified to testify as an expert in the area of electrical fires.

## B. Helpfulness

The helpfulness requirement "goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful." *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.,* 326 F.3d 1333, 1347 (11th Cir.2003) (quoting *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786). In addition to being relevant, expert testimony should concern "matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63.

In this case, Underwood offers several opinions leading up to his ultimate conclusion that the most likely cause of the fire in the Kilgore's home was "contamination of the electrical outlet by fragrance oil vapors from the Airwick bottle, followed by breakdown, carbonization and shorting across the surface of the receptacle plastic." This opinion is central to the case because the Kilgores cannot prevail at trial without evidence that RBI's air freshener caused the fire. The opinion also concerns matters beyond the understanding of the average layperson. Therefore, assuming it is reliable, Underwood's testimony will be helpful to the jury.

## C. Reliability

The Court's reliability analysis will follow the framework of Rule 702, which requires that (1) the testimony be based on sufficient facts or data, (2) the testimony

be the product of reliable principles and methods, and (3) the expert have reliably applied the principles and methods to the facts of the case. RBI challenges three of Underwood's proffered opinions, each of which relates to one of these requirements.

First, RBI challenges Underwood's opinion that the receptacle at the fire origin was contaminated with fragrance oil vapors. Although presented as such, this is not really an opinion based on Underwood's expertise; it is a fact upon which he relied in reaching his opinion as to the cause of the fire. Thus, the Court will consider RBI's arguments on this issue in the context of determining whether that opinion is based on sufficient facts or data.

Second, RBI challenges Underwood's opinion that "[c]ontamination of electrical receptacles by external sources and resulting degradation and shorting is a known fire cause." This is the principle on which Underwood relied in reaching his opinion as to the cause of the fire. Thus, the Court will consider RBI's arguments on this issue in the context of determining whether that opinion is the product of reliable principles and methods.

Finally, RBI challenges Underwood's ultimate opinion that its air freshener is the most likely cause of the fire. The Court will consider RBI's arguments on this issue in the context of determining whether Underwood reliably applied his principles and methods to the facts of the case.

■■ In covering these three areas, the Court will consider the factors the Supreme Court set forth in *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786, as appropriate. However, trial courts retain "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167. "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262.

■■ The specific *Daubert* factors are "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002) (citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786).

■■ Despite its obligation to ensure that expert testimony is reliable, the Court is cognizant that "case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED.R.EVID. 702 advisory committee notes (2000 amendments). Indeed, "[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Maiz v. Virani*, 253 F.3d 641, 666 (2001) (quoting *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir.1999)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.

### 1. Sufficient Facts or Data

One of the "opinions" presented in Underwood's expert report is that "[t]his receptacle was contaminated with fragrance oil vapors." However, this is not an opinion based on Underwood's expertise (he is not a chemist); rather, it is a fact on which he relied in forming his opinion as to the cause of the fire. Thus, the Court will evaluate it in the context of determining

whether that opinion is based on sufficient facts or data.

 The requirement that expert testimony be based on sufficient facts or data "calls for a quantitative rather than qualitative analysis." FED.R.EVID. 702 advisory committee notes (2000 amendments). It "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Id.* Thus, "where the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis." *United States v. 0.161 Acres of Land,* 837 F.2d 1036, 1040 (11th Cir.1988).

 In this case, Underwood assumed that the outlet was contaminated with fragrance oil vapors at the time of the fire because (1) the outlet was stored in a sealed plastic bag from the time of the fire until he examined it in April 2011; (2) he smelled fragrance oil vapors coming from the outlet when he examined it in April 2011; and (3) a chemical analysis of the outlet conducted by ATS in April 2011 revealed the presence of such vapors.[1] RBI argues that this factual assumption is unreliable because there is no direct proof that the outlet was contaminated at the time of the fire, and it could have been contaminated during storage after the fire.

More specifically, RBI argues that because the outlet was stored in a sealed can with a bottle of fragrance, vapors could have transferred from the bottle of fragrance to the outlet during storage. However, the outlet and the bottle of fragrance were kept in separate, sealed plastic bags within the can. Moreover, when Underwood opened the can to examine the outlet

in April 2011, he noticed only a slight odor. In contrast, when he opened the plastic bag containing the outlet, there was an odor so pronounced that "it makes you reel when you open the bag." Based on the strength of the odor coming from inside the outlet bag in comparison to the odor coming from without, Underwood concluded that vapors were not transferred through the plastic bags during storage. Thus, he concluded that the outlet must have been contaminated at the time of the fire.

RBI's argument is misguided because it is a qualitative rather than quantitative challenge to the factual basis for Underwood's opinion. The condition of the outlet at the time of the fire is in dispute; however, Underwood made a reasonable, common-sense assumption about that fact, and the Court cannot exclude his opinion simply because he may be wrong. Instead, it will be up to the jury to resolve the factual dispute and evaluate his opinion accordingly.

Notably, RBI does not challenge the quantitative factual basis for Underwood's opinion. Indeed, Underwood considered much more than the chemical analysis report and the odor coming from the outlet in April 2011. He examined several items removed from the scene of the fire, including the outlet, the section of carpet located below the outlet, and the remains of the fragrance bottle found on that section of carpet. He also considered a fire cause and origin report completed by fire investigators Loren Griswold and Michael Sims, and he examined several photographs of the fire scene. Therefore, the Court finds that his opinion is based on sufficient facts or data to be admitted under Rule 702.

1. The chemical analysis report is dated July 26, 2011, but Underwood testified that the analysis itself was probably conducted sometime in April 2011.

## 2. Reliable Principles and Methods

■ Another one of the opinions presented in Underwood's report is that "[c]ontamination of electrical receptacles by external sources and resulting degradation and shorting is a known fire cause." Underwood relies on this principle in formulating his opinion as to the cause of the fire in this case. Thus, the Court will evaluate it in the context of determining whether that opinion is based on reliable principles and methods. However, this is not the entirety of the principles and methods Underwood applied, because it says nothing about how to determine whether a particular fire was caused by receptacle contamination, degradation and shorting. Thus, a closer look at Underwood's analysis is necessary to determine the reliability of his principles and methods.

Underwood cites three articles in support of the proposition that "[c]ontamination of electrical receptacles by external sources and resulting degradation and shorting is a known fire cause." The first is an article from the Spring 1993 issue of *Fire Findings* entitled "Electrical Receptacles Not in Use Can Cause Fires."[2] The second is an August 24, 2001 article by Chris W. Korinek entitled "Classification of Electrical Overheating Modes." And the third is an article by Jesse Aronstein from the January 1992 issue of the American Society of Home Inspectors Technical Journal entitled "Electric Receptacles."

The Court is satisfied that these three articles establish as a reliable scientific principle the general proposition for which Underwood cites them, i.e., that receptacle contamination can cause a fire. However, they do not reliably establish the condi-

tions necessary for that to occur. Indeed, the Korinek article, the most recent of the three, states that "more research is needed to understand the details of this mode of overheating and 'to clearly define the conditions for causing a fire.' "[3] Because there is no reliable method for determining whether the conditions for this mode of failure were present, the Court must look closer at how Underwood determined that it occurred in this case.

Underwood's report reveals that he arrived at his opinion through a process of elimination. Specifically, Underwood concluded that receptacle contamination most likely caused the fire because (1) the receptacle and air freshener were the only potential ignition sources at the point of origin; (2) contamination and shorting across the receptacle plastic is a competent ignition source, and (3) the resistor inside the air freshener does not get hot enough to be an ignition source.

■ Process of elimination can be a reliable method for determining the cause of a fire. *See Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257–58 (8th Cir.2006) ("Based on the identification of a point of origin and the elimination of other possible causes, it is permissible for Mr. Schoffstall to testify as to the point of origin and to explain that he inferred through process of elimination that the PowerChair was the cause of the fire."); *see also United States v. Santiago*, 202 Fed.Appx. 399, 401 (11th Cir.2006) (trial court was within its discretion to admit fire expert's testimony using process of elimination). Thus, the Court finds that the principles and methods Underwood applied in this case were reliable and now turns to

---

**2.** This article does not identify an author.

**3.** Korinek is quoting NFPA 921: Guide For Fire And Explosion Investigations § 6.9.4.4

(2001), published by the National Fire Protection Association.

whether those principles and methods were reliably applied.

### 3. Principles and Methods Reliably Applied

RBI argues that Underwood's opinion is unreliable because he failed to eliminate other potential causes of the fire. First, RBI argues that the fire could have been caused by a power surge. However, in response to RBI's motion, the Kilgores submitted an affidavit by Underwood stating that if the outlet had received a sudden increase in voltage sufficient to cause a fire, that phenomenon would have been observable, and his examination of the outlet revealed no evidence of that mode of failure.

Next, RBI argues that even if the fire was caused by contamination of the receptacle, the source of contamination could have been something other than the air freshener. However, Underwood determined that the air freshener was the "most likely" source of contamination because of its proximity to the receptacle and its function of emitting vapors. He also found no evidence of any other source of moisture near the outlet.

■ Ultimately, Underwood reliably applied a process of elimination to determine the most likely cause of the fire. First, he relied upon the report of fire investigators Loren Griswold and Michael Sims to conclude that the fire originated at the outlet. Second, he examined the physical evidence and determined that it was consistent with contamination, degradation and shorting across the outlet. Specifically, he determined that the outlet was of a type particularly susceptible to that mode of failure, and he noted that the concentrated damage in the upper portion of the outlet was consistent with that mode of failure. Finally, he reliably eliminated other potential causes to reach his opinion that contamination from the fragrance oil vapors emitted by the air freshener was the most likely cause of the fire.

In sum, Underwood's opinion is based on sufficient facts or data, it is based on reliable principles and methods, and Underwood reliably applied those principles and methods. Therefore, his expert opinion as to the cause of the fire is admissible under Federal Rule of Evidence 702.

### III. Conclusion

Defendant's motion to exclude the testimony of Plaintiffs' expert, Richard I. Underwood [31] is DENIED.